STATE *ex rel.* LEWIS WALTON

*v.*

CHARLES PATRICK CASEY,

*Judge of the Circuit Court*

*of Kanawha County, West Virginia*

(No. 14240)

Decided May 22, 1979.

Rehearing Denied June 14, 1979.

*John A. Amick* for relator.

*Cletus B. Hanley*, Prosecuting Attorney, *Spencer P. Simpson, Betty L. Caplan*, Assistant Prosecuting Attorneys, for respondent.

HARSHBARGER, JUSTICE:

Walton was arrested April 4, 1975, for murder. On April 7 he had a preliminary hearing and was bound to the Kanawha County grand jury, which indicted him. On April 16 his counsel moved, and the trial court ordered

*per W. Va. Code*, 27-6A-1(a)[1] mental examination of the defendant by two Charleston psychiatrists, Drs. Rossman and Smith, whose reports were filed in June and July.

Further examination was ordered at Spencer State Hospital, where defendant was committed by authority of *Code*, 27-6A-1(b),[2] and the reports of this examination were made in August.

Although no record of a finding by the court of competency was made "Within five days after the receipt of the report on the issue of competency to stand trial ..." as prescribed by *Code*, 27-6A-1(d), a competency hearing was held November 14. The evidence by the medical experts seemed to be contradictory, or at least of differ-

---

[1]*W. Va. Code*, 27-6A-1(a):

Whenever a court of record believes that a defendant in a felony case or a defendant in a misdemeanor case in which an indictment has been returned may be incompetent to stand trial *or is not criminally responsible by reason of mental illness, mental retardation or addiction*, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist. [Italics ours]

[2]*W. Va. Code*, 27-6A-1(b):

After the examination described in subsection (a) of this section, the court of record may order that the person be admitted to a mental health facility designated by the director of health for a period not to exceed twenty days for observation and further examination if the court has reason to believe that such further observation and examination are necessary in order to determine whether mental illness, mental retardation or addiction have so affected a person that he is not competent to stand trial *or not criminally responsible for the crime or crimes with which he has been charged*. If, before the expiration of such twenty-day period, the examining physician believes that observation for more than twenty days is necessary, he shall make a written request to the court of record for an extension of the twenty-day period specifying the reason or reasons for which such further observation is necessary. Upon the receipt of such request, the court of record may by order extend said observation period, but in no event shall the period exceed forty days from the date of the initial court order of observation. [Italics ours]

ing velocity. Its substance, however, was that Walton was chronically schizoid, paranoid type, homicidal.

Dr. William B. Rossman's report of July 10, 1975, concluded:

> "My feelings about Mr. Walton are (1) he is mentally ill with a chronic psychotic illness—schizophrenia-like in its manifestations. I believe he was this way when the alleged crime was committed. Further I believe this prisoner cannot assist his attorney in preparation for his defense. In a word, the prisoner is incompetent mentally now and was this way at the time of the alleged crime."

Dr. Ralph Smith, Jr.'s June, 1975 report concluded: "Thus I submit that he is incompetent to stand trial at this time, that he was psychotic at the time of the alleged crime, and that the crime is partially a product of his mental illness."

Donald R. Swick, a clinical psychologist who tested Walton on referral by Dr. Smith, reported of his May 6, 1975 examination, that Watson's "... mental condition would curtail effectiveness in assisting a defense attorney, and classifies him as incompetent."

Dr. Rosalia C. Galvez of Spencer Hospital wrote on August 13:

> "Dear Judge Casey:
>
> We have completed our studies on the above-named individual, who was admitted to this hospital pursuant to an order of your court.
>
> In the opinion of the staff, Lewis Walton is not competent to stand trial, in that he is suffering from a chronic mental illness. Our diagnosis is Psychosis with Brain Trauma. We recommend that he be maintained in this hospital and, with the permission of the court, we will institute proceedings for civil commitment. For your information we are enclosing a copy of our admission note and staff conference note.

If we can be of any further assistance, please let us know.

> Very truly yours,
> Rosalia C. Galvez, M.D.
> Asst. Clinical Director."

We note that Dr. Galvez recommended civil commitment, and that Spencer staff conference notes of August 12 resulting from evaluation in "staff" by Doctors Galvez, A. Famularcano, P. Famularcano, Figueroa, Rugonfalvy, Rajgurn, Mr. Earles, Mr. DeMoss, Mr. Tucker, Mr. Goff, and Mrs. Carpenter, of the Spencer facility, concluded: "Patient is mentally ill and not competent to stand trial. Recommend civil commitment."

Dr. Charles C. Weise examined Walton also, and reported on May 23, 1975:

"At the time of the alleged crime, April 4, 1975, I feel Mr. Walton was suffering from a mental illness, that he was psychotic and that the illness was Schizophrenia, paranoid type, I feel that this mental illness did not cause him to lack the capacity to appreciate the wrongfulness of the act of murder. I feel that mental illness did cause him to lack the capacity to conform his actions to the requirements of the law.

It should be noted, in Mr. Walton's case, there have been threats and aggressive actions of one type or another over a period of years and that no psychiatric treatment to date has been successful to modify this type of behavior. Mr. Walton still has homicidal and probably suicidal impulses. He is a danger to himself and to the community. It is my opinion, at the present time, there is no type of psychiatric or medical treatment that will result in any significant long term improvement in Mr. Walton's case except life time hospitalization or placement in a sheltered and protected type of situation with life time maintenance medication. I know that this type of hospitalization has been viewed by others as

punishment, however, in Mr. Walton's case, I feel such a hospitalization, along with maintenance chemotherapy, would allow him to be free of psychotic behavior and thinking more of the time and therefore his life would be more comfortable for him. This would also be a means of avoiding the obvious danger he will be to society if he should in the future be required to function independently."

When Dr. Smith reexamined Walton on November 25, 1975, the prisoner's reaction to him was that he suspected Dr. Smith was trying to kill him. "I have now been included in his delusional system", Smith rather forlornly wrote.

Weise by court direction reexamined Walton January 19, 1976. He found that although Walton ". . . remains in a delusional state and that he remains agitated and overtly psychotic. . . . It is my impression at this time that Mr. Walton is able to understand the nature of the charges against him. He is able to cooperate with his lawyer in his own defense. . . ."

Weise did not recant nor even mention his previous opinion that at the time of the killing Walton lacked ". . . capacity to conform his actions to the requirements of the law."

On April 27, 1976 Doctors Weise, Smith and Rossman again examined Walton at the trial court's request, and reported:

"This is to certify that we the undersigned jointly examined Louis (sic) Walton and as a result of our psychiatric examination, we find Mr. Walton to be overtly psychotic. We feel that he is at this time unable to understand the nature of the charges against him and that he is unable to cooperate with his attorney in his own defense."

Walton remained institutionalized until September, 1977, when at a reported conference between the trial judge, the Kanawha County prosecuting attorney, Walton and his lawyer, and Dr. Andrew S. Wachtel, Superin-

tendent at Spencer State Hospital, the court carefully and patiently discussed the options available to Walton with him, elicited his opinions about treatment, received the physician's appraisal, and upon Walton's request ordered his continued treatment at Spencer.

His case is here because *Code*, 27-6A-2(c) requires a court to dismiss criminal charges against a defendant if he is found incompetent to stand trial after six months' court-ordered hospitalization plus an additional three months if requested by the hospital staff.[3] The dismissal may be stayed ten days to allow civil commitment proceedings to be instituted pursuant to *Code*, 27-5-1.

We acknowledge the mandatory aspect of 27-6A-2(c): "If the individual is found initially to be incompetent to stand trial with no substantial likelihood of obtaining competency, or if after such improvement period the individual is found to be incompetent to stand trial, the *criminal charges shall be dismissed.*" [Italics ours]

We should not overlook that remaining pertinent parts of *Code*, 27-6A-1 refer in its subsections (a), (b) and (c) to a court's receipt of reports that a defendant is not criminally responsible for the acts he is charged with.[4]

Although the section's title is "Determination of competency of defendant to stand trial and of criminal re-

---

[3]Counsel for Walton does not contend about procedures: "Relator believes that all of the procedural steps have been satisfied, the psychiatric examination was ordered, the reports of such examination were filed, evidence was presented at a properly conducted hearing ordered by the court, and findings of fact were made in the orders adjudging the defendant's incompetency to stand trial. All that remains to be done is to satisfy sub-section (sic) (c) of Article 6A." Brief, p. 6.

[4]*See* n. 1, *supra*, for *Code*, 27-6A-1(a)(b). (c) is:

"At the conclusion of each examination or observation period provided for herein, the examining psychiatrists, or psychiatrist and psychologist, shall forthwith give to the court of record a written signed report of their findings on the issue of competence to stand trial or *criminal responsibility.* Such report shall contain an opinion, supported by clinical findings, as to whether the defendant is in need of care and treatment." [Italics ours]

sponsibility; examination; commitment" there is no further mention of what the trial court procedure shall be when a defendant is found by the experts to have no criminal responsibility for his or her acts because of mental incapacity. There is only explicit direction when defendant's incompetency to stand trial is determined.

We must therefore, seek from other parts of Chapter 27, guidance to courts confronted, as is this trial court, with disposition of a defendant who appears to have been insane when the crime was committed, and not criminally responsible for his actions.

*Code,* 27-5-1 is helpful. It allows for the involuntary commitment ". . . by order entered of record at any time by the circuit court of the county wherein such person resides or was found . . . after a full hearing on the issues relating to the necessity of committing an individual to a mental health facility. . . ." The procedures set out in *Code,* 27-5-4 may then be followed, comporting with the requirements of *State ex rel. Walker v. Jenkins,* W. Va., 203 S.E.2d 353 (1974).

We address this aspect of the case because there appears to be no question that Walton was not criminally responsible for his actions when the crime with which he was charged, was committed. A criminal trial is unwarranted when pre-trial psychiatric examinations clearly reveal by a preponderance of the evidence that the accused at the time the crime was committed, was not criminally responsible for his acts.[5]

The writ is awarded, with directions that the accused by proceeded against for civil commitment to the Department of Health's custody as provided by law—a commitment about which there seems, in Walton's situation, to be no question.

*Writ awarded.*

---

[5]*Contra,: People v. Whitman,* 149 Misc. 159, 266 N.Y.S. 844 (1933).