STATE EX REL. LEONARD SMITH

*v.*

GEORGE M. SCOTT, JUDGE, *etc.*

(No. 15181)

Decided June 23, 1981.

*Larry L. Skeen, Joseph C. Hash, Jr.,* for relator.

*Chauncey H. Browning,* Attorney General, *Janet Frye Steele,* Assistant Attorney General, for respondent.

NEELY, JUSTICE:

This original writ of prohibition was brought to compel the respondent circuit judge to dismiss criminal proceedings against the relator because pretrial psychiatric examinations clearly reveal that relator was not criminally responsible for the act of malicious assault with which he is charged at the time the crime was committed. This case requires us to interpret syl. pt. 1 of *Walton v. Casey,* 163 W.Va. 208, 258 S.E.2d 114 (1979) where we said:

> A criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts.

The relator was committed for psychiatric examinations pursuant to *W.Va. Code,* 27-6A-1 [1977] *et seq.* and several psychiatric reports indicated that the relator was not criminally responsible for the malicious assault in question. Other psychiatric reports indicated that the relator was criminally responsible, although it was agreed by all doctors that relator had serious mental problems. Upon this record the respondent Judge declined to hold a pretrial hearing on relator's criminal responsibility at the time the assault occurred, and indicated that the issue of sanity could be presented to the jury during trial. There was no indication in the psychiatric reports that the relator was not competent to stand trial and, consequently, no hearing was demanded on that issue.

Notwithstanding the policy expressed in syl. pt. 1 of *Walton v. Casey, supra,* we cannot find any pretrial mechanism in *Code,* 27-6A-1 [1977] *et seq.* for the dismissal of an indictment before a jury trial without a motion by the prosecuting attorney to *nolle* the indictment and acquiescence in that motion by the trial court judge. Certainly, it is the policy of *Code,* 27-6A-1 [1977] *et seq.* to permit the issue of sanity to be developed at trial. Where it is suggested on the record that the defendant, while competent to stand trial, was not criminally responsible for his actions, Code, 27-6A-1 [1977] *et seq.* provides a mechanism by which a defendant can be evaluated at the state's expense so that he may properly prepare his defense.

*W. Va. Code,* 27-6A-1 [1977] *et seq.* presents the procedure for determining the competency of a criminal defendant to stand trial. The only reference to criminal responsibility is found in subsections (a), (b), and (c), of *Code,* 27-6A-1 [1977]. In essence these subsections provide that, when a court believes that there is a question of the defendant's mental competency to stand trial or his criminal responsibility at the time of the crime, the court may order an examination of the defendant. The court may also order that the defendant be admitted into a health facility for further observation and examination if necessary to determine mental competency or criminal responsibility.

In the case before us the trial court judge apparently was unconvinced by the psychiatric evidence presented to him. Although there were a larger number of medical opinions to the effect that the relator was not criminally responsible for his actions, nonetheless, there was significant credible evidence that he was responsible. The term "preponderance of the evidence" does not refer exclusively to the quantity of testimony but to the quality of that testimony as well. In the area of mental capacity, expert opinion is predicated upon a wide spectrum of conflicting medical philosophies. It is perfectly reasonable to let the question of insanity go to a jury after full development of the issue through, among other things, cross-examination concerning the medical philosophy upon which the opinions are

founded as well as the methodology by which the opinions were formulated.

When the issue of sanity has been fully developed at trial and it conclusively appears that the defendant was not criminally responsible at the time the crime was committed, the trial judge may, and in many instances must, direct the verdict in favor of the defendant. Furthermore, neither judges nor prosecutors are usually interested in going through the vain act of a trial where there is overwhelming pretrial psychiatric evidence that the defendant was not criminally responsible at the time the crime was committed. When it appears obvious that a trial court judge will direct a verdict in favor of the defendant on the issue of criminal responsibility, the proper course is for the prosecutor to move to *nolle* the indictment and where appropriate, to proceed with a motion for a civil commitment. However, there is no statutory or common law machinery for compelling such a reasonable result.

*W. Va. Code*, 27-6A-1 [1977] *et seq.* does not provide a mechanism through which a criminal indictment may be dismissed for lack of criminal responsibility in advance of trial without a motion to *nolle* by the prosecutor. Furthermore, *Code*, 27-6A-1 [1977] *et seq.* does not require a hearing on the issue of criminal responsibility before trial, and it is obvious from the structure of the statutory scheme that only a hearing on the defendant's competency to stand trial is mandatory.

A clear distinction must be drawn between insanity which precludes responsibility for crime, and insanity which precludes a trial. Here we may turn to guidance from the U.S. Circuit Court of Appeals for the District of Columbia interpreting 18 USC § 4244 (1952):

> "In a criminal case claims of insanity are possibly pertinent at three points of time, (1) the time of the offense, (2) the time of the trial, and (3) the time of possible release after acquittal by reason of insanity. These points of time may be widely separated. Three different questions are pertinent upon these three occasions. (1) As of the time of the offense the question is whether the accused had a

mental disease or defect and whether his alleged criminal act was the product of such disease or defect. The basic concern of the law at that point is whether the accused was in such mental condition that he should be held responsible for his crime. This is a matter of evidence and a question to be decided by a jury, unless there is no real conflict in the evidence. It is part of the trial for the offense. The inquiry, and the decision, must be as of the time of the offense. Evidence as to the accused's mental condition either before or after the offense may be admissible, but it is admissible only in so far as it is relevant to his condition as of the time of the offense.

"(2) As of the time of the trial the question, as prescribed by statute, is whether the accused is mentally competent to understand the nature of the charges against him and to assist in his defense. He may have a mental disease, and the mental disease may have been the cause of his criminal act, and he may be suffering from the same disease at the time of his trial; but it is a scientific fact that he nevertheless may be competent to stand trial under this definition of competency. A paranoiac or a pyromaniac may well understand the charges against him and be able to assist in his defense. "To assist in his defense" of course does not refer to legal questions involved but to such phases of a defense as a defendant usually assists in, such as accounts of the facts, names of witnesses, etc. The standard of measurement of competency to stand trial is different from the standard of measurement for responsibility for a criminal act.

"The jury has no concern with the accused's competency to stand trial. That question is solely for the judge. Evidence in respect to this defined competency is not admissible before the jury, because it is not relevant to any question which the jury has to decide. We repeat, for emphasis, and lest we be misunderstood, that evidence as to insanity at any time—the present as well as any other—may be admitted in so far as it is relevant to the mental

condition of the accused at the time of the offense; that is, where it is used by a witness as part of the data upon which he bases a conclusion as to mental condition at the time of the offense. What we are here saying is that the competency of the accused at the time of trial to understand the charges against him and to assist in his defense is a legal question for the judge, not for the jury, evidence in respect to that question is inadmissible, and the judge must not comment on that subject to the jury.

"(3) As of the time of proposed or potential release from commitment the question is whether the accused has regained his sanity and whether he will in the reasonable future be dangerous to himself or others. That determination is confided by the statute in the superintendent of the hospital and the court. The function of each is a real responsibility."

*Lyles v. United States,* 254 F.2d 725, 729-30 (1957) *overruled on other grounds, United States v. Brawner,* 471 F.2d 969 (1972).

Obviously, insanity that prevents a defendant from understanding the nature and object of the proceedings against him and cooperating with counsel in preparing a proper defense must bar a trial in order to protect the accused. On the other hand, we believe that the determination whether a man is responsible for his conduct is frequently not exclusively a *medical* decision but a legal, social, and moral judgment as well. The psychiatrists provide the evidence of insanity but it is the jury, or the judge, which resolves conflicts in the evidence, evaluates methodology where expert conclusions are predicated upon differing scientific approaches, and concludes whether a particular level of insanity erases an accused's accountability for his conduct in close cases.[1] Our research

---

[1] Our decision reflects the wisdom of the majority of our sister states. *See, e. g., People v. Sanchez,* 65 Cal. 2d 814 (1967); *Faught v. State,* 155 Ind. App. 520, 293 N.E.2d 506 (1973); *Commonwealth v. Francis,* 355 Mass. 108, 243 N.E.2d 169 (1969); *State v. Pautz,* 217 N.W.2d 190 (Minn.

discloses no jurisdiction in which medical agreement that a defendant lacks criminal responsibility prohibits a trial.

Consequently, we hold that a trial court judge is not under any duty to hold a hearing on the issue of criminal responsibility in advance of trial regardless of how compelling the pretrial reports may be. Criminal responsibility is a jury question, *State v. Vineyard*, 85 W.Va. 293, 101 S.E. 440 (1919), unless both prosecutor and judge concur that the outcome of the proceedings would be a foregone conclusion. Since we believe that syl. pt. 1 of *Walton v. Casey, supra* correctly states proper policy with regard to the humane treatment of those not criminally responsible for their acts, we reaffirm today our conclusion that trying people who are obviously not criminally responsible is an unnecessary strain upon a defendant in need of treatment as well as a waste of judicial, prosecutor, jury, and lawyer time. Nonetheless, the decision regarding whether to adopt the policy expressed in syl. pt. 1 of *Walton v. Casey, supra*, is within the discretion of the trial court judge and the prosecutor, and for that reason the writ of prohibition for which the relator prays must be denied.

*Writ denied.*

HARSHBARGER, CHIEF JUSTICE, dissenting:

I dissent to this majority's opinion that has implicitly and effectively overruled Syllabus Point 1 of *State ex rel. Walton v. Casey*, 163 W.Va. 208, 258 S.E.2d 114 (1979), good law that provides civilized safeguards for insane defendants, and at the same time protects the public and its tax dollars from wasteful, expensive trials.

Criminal jury trials cost a lot of money. And so when numerous court-appointed experts have determined that a defendant was not mentally responsible for his criminal behavior–that is, he had a mental defect which made him incapable of conforming his acts to the requirements of law, *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977), Syllabus

1974); *Franklin v. State*, 455 S.W.2d 479 (Mo. 1970); *People v. Thompson*, 35 A.D.2d 686, 314 N.Y.S.2d 646 (1970); and *State v. Bergenthal*, 47 Wis.2d 668, 178 N.W.2d 16, *Cert. denied* 402 U.S. 972 (1970).

Point 4–it is a waste of money to try him, because he is by all law in this nation, not capable of conviction. Why indulge in the spectacle?

*Walton* required that when a preponderance of evidence of insanity was found, in pretrial proceedings, a trial court would dismiss criminal charges and proceed to commitment procedures designed to ensconce mental defectives in secure institutions for care and treatment. Here, two psychiatrists and two psychologists evaluated defendant and filed reports with the circuit court:

1.  "I would say that Mr. Smith is suffering from a mental defect which quite possibly could result in his having psychotic or dissociative states when subjected to stress which would cause him to lack the capacity to appreciate the wrongfulness of his actions which he was performing impulsively. . . . It is my belief that he is in dire need of long-term psychiatric treatment. . . ."

Robert E. Sams, M. D.

2.  "I must say that the action was motivated by defect of reason which made it impossible for him to control his actions at the moment of the alleged crime. It is my opinion, therefore, that he is not responsibile for his actions due to acute mental defect which lowered his rational controls to a point where he could not consciously manage his behavior."

Thomas S. Knapp, M. D.

3.  "In conclusion, I regard Mr. Smith as lacking the capacity to appreciate the wrongfulness of his actions at the time he made his assault on his wife. . . . I think there is a possibility of another breakdown in the form of an aggravation of his anxiety and depression and with psychiatric symptoms beginning to develop. Finally, I do see Mr. Smith as requiring continued psychiatric and psychotherapeutic assistance."

Fred T. Lee, Ph. D.

4.  "[I]n my professional opinion I find no evidence that his behavior (alleged to not conform to the law) was a result of mental illness, mental retardation or addiction at the time of the incident.

... Mr. Leonard Smith is criminally responsible at the time of the alleged incident. ..."

E. Rick Beebe, Ed. D.

As a matter of law, if three of four court-ordered experts' reports disclose that a defendant lacked criminal responsibility when he did the act with which he is charged, there is a preponderance of evidence by the *Walton, supra,* test. Overruling *Walton* protects no one—but allows waste of time and money of defendants and citizens-taxpayers.

I believe this majority distrusts psychiatric and psychological testimony—and, I must say, is attempting to protect trial judges from having to make hard decisions in potentially politically unpopular cases, that a defendant who has committed a crime that arouses community and prosecutorial blood-lust, be forthwith sent off to an asylum rather than be tried, even though he was medically incapable of having criminal intent necessary for criminal conviction.

I am authorized to state that Justice McGraw joins me in this dissenting opinion.