301 S.E.2d 776

**STATE of West Virginia**

v.

**Henry BIAS.**

**No. 15636.**

Supreme Court of Appeals of West Virginia.

March 25, 1983.

S. Clark Woodroe & Fredrick S. Wilkerson, Asst. Attys. Gen., Charleston, for appellee.

Bradley J. Pyles, Crandall, Pyles & Crandall, Logan, for appellant.

HARSHBARGER, Justice:

Bias' two-day 1980 Logan County jury trial resulted in a conviction for first degree murder without recommendation of mercy. His appeal claims ineffective assistance of counsel and erroneous instructions about the burden of proof for insanity defenses.

Lennie Sawyers, defendant's mother, was brutally murdered on October 23, 1968 in her home. She had multiple stab wounds and had been beaten with two skillets. Bias, a Cleveland resident, was visiting her, and they were alone in the house after 7:00 a.m., but when a neighbor discovered Ms. Sawyers' mutilated body at about 10:30 a.m. that day, Bias was nowhere to be found. At 9:30 that evening he walked into the local YMCA. The Logan state police arrested him there, brought him to headquarters, questioned him, and he gave a written statement indicating that he and his mother quarrelled, and that then he blacked out for hours.

Counsel was appointed the next day, and Bias was indicted on January 13, 1969. His attorney requested a psychological examination and the two physicians who saw him found him psychotic, and recommended commitment. The court committed him to Weston State Hospital on March 25, 1969. In April, 1969 a staff doctor at Weston found him to be delusional and suffering from chronic undifferentiated schizophrenia. A clinical psychologist also found him to be delusional and chronically psychotic. The staff met about him in May, 1969 and found him psychotic with chronic undifferentiated schizophrenia. By September he was improved, and his psychosis was in remission. He was returned to Logan County's jail.

In January, 1970, the jailer asked the court to recheck defendant's mental condition. He had attempted suicide and was extremely disruptive. The court had him tested, and two doctors and another clinical psychologist recommended commitment. On March 13, 1970, the court found him incompetent, and committed him to Huntington State Hospital. He escaped four times before February 14, 1972, thrice returning to the hospital voluntarily. On February 14, 1972, he left again and did not return until he was extradited from Indiana in April, 1973.

A new attorney was appointed for him in September, 1973, another mental evaluation was ordered, and he was again found incompetent and recommitted to Huntington State Hospital on February 5, 1974. He escaped on March 12 before he was evaluated. Five and a half years later, in November, 1979, he walked into the Logan County Circuit Clerk's office and asked for money he believed the clerk was holding for him. The clerk recognized his name and alerted the police, who arrested him. Another attorney was appointed, another psychiatric examination was requested, and he was committed to Weston State Hospital

for a twenty-day evaluation. A physician and psychiatrist found him competent to stand trial, and after a competency hearing in March, 1980, he was tried on April 30 and May 1, 1980.

A further investigation into his history of mental illness revealed that in December, 1965, while in jail on a peace bond, he exhibited bizarre behavior. The jailer asked the court to have him evaluated. The 1965 evaluation by two psychiatrists at Huntington State Hospital found him mentally unbalanced, nervous, and in need of treatment. The next week he was evaluated by a staff psychologist who noted he suffered strong delusions, had an I.Q. of 72, and was psychotic. He walked out of the hospital on December 21, 1965.

 We are very cautious about finding that counsel has been ineffective. *State v. Baker*, 169 W.Va. 357, 287 S.E.2d 497, 502 (1982).

19. In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law

. . . .

21. Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused. Syllabus Points 19 and 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

*See also State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461 (1982).

When this case was tried in 1980, our law on criminal trials for defendants whose pretrial psychiatric examinations revealed they were not criminally responsible for their acts was stated in *State ex rel. Walton v. Casey*, 163 W.Va. 208, 258 S.E.2d 114 (1979), Syllabus Points 1 and 2: [1]

1. A criminal trial is unwarranted when pre-trial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts.

2. *W. Va. Code*, 27–6A–2(c) requires a court to dismiss criminal charges against a defendant if he is found incompetent to stand trial after six months' court-ordered hospitalization plus an additional three months if requested by the hospital staff. The dismissal may be stayed ten days to allow civil commitment proceedings to be instituted pursuant to *Code*, 27–5–1.

At 167 W.Va. page 237, 280 S.E.2d page 814, the Court stated:

"Since we believe that syl. pt. 1 of *Walton v. Casey, supra,* correctly states proper policy with regard to the humane treatment of those not criminally responsible for their acts, we reaffirm today our conclusion that trying people who are obviously not criminally responsible is an unnecessary strain upon a defendant in need of treatment as well as a waste of judicial, prosecutor, jury, and lawyer time. Nonetheless, the decision regarding whether to adopt the policy expressed in syl. pt. 1 of *Walton v. Casey, supra,* is within the discretion of the trial court judge and the prosecutor ...."

Even by *Smith*'s modification of *Walton,* defense counsel should have moved the court to exercise its discretion to dismiss criminal proceedings against Bias.

---

**1.** *State ex rel. Walton v. Casey, supra,* was modified in 1981 by *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811, Syllabus:

"While a criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts, *W. Va. Code,* 27–6A–1 [1977] *et seq.* provides no mandatory pretrial mechanism for resolving the issue of criminal responsibility; consequently, adjudication of criminal responsibility before trial is entirely within the combined discretion of the trial court judge and the prosecuting attorney, since absent a motion to *nolle* an indictment by the prosecuting attorney based on persuasive pretrial medical reports, the trial court judge has no discretion to deny the State a trial by jury on the issue of criminal responsibility."

Bias' pretrial psychiatric examinations were at least as strong as Walton's. Clearly a preponderance of the evidence indicated lack of criminal responsibility.

In 1965 when Bias was examined by court order[2] at the jailer's request, Dr. Starcher and Dr. Rowan found that he was mentally ill and a danger to himself and to others, requiring immediate hospitalization. Ms. O.P. Mortison, a clinical psychologist who evaluated him at that time, noted that Bias had very strong delusions, including one that John F. Kennedy bought and paid $25,000 for some property and deeded it to him and his daughter, and that Kennedy also put $30,000 in a trust fund for them. She concluded:

> Henry Bias is mildly mentally deficient and probably always has been. He also is psychotic. His condition is somewhat like a paranoid state, but it may be a chronic undifferentiated schizophrenia with some paranoid and depressed features.

In March, 1969, Dr. Kessel reported:

> It is my opinion that this man is mentally incapaciated [sic]. I feel he has a deep seeded [sic] mental and emotional problem and that he low-edd [sic] mental function and has a psychopathic personality. I feel that it would be wise for this man to be hospitalized in a maximum security mental hospital where psychometric evaluation and psychiatric observation and treatment can be obtained before a final opinion be rendered.

Dr. Aviles, a staff physician at Weston State Hospital, tentatively diagnosed Bias on April 29, 1969 as "Schizophrenia, Chronic Undifferentiated Type. (Rule out Schizophrenia, Paranoid Type)" with a "Guarded to poor" prognosis.

In May, 1969, Arnold Nelson of Psychological Services at Weston discussed Bias' delusions, and concluded:

> The lack of affect coupled with paranoid projections, is strongly indicative of a psychotic level of adjustment, rather than neurotic defensive procedures.

Mr. Bias needs psychiatric care to the fullest extent. He is marginally in contact with reality at the moment and should therefore be open to the therapeutic milieu. His only steady occupation has been as a coal miner; thus, we may wish to refer him to Rehabilitation for vocational development. This patient should be kept in the Security Building for further treatment, but he will probably have to be returned to court for sentencing. The chronic appearance of his illness would lead me to believe that he was quite out of touch with reality when he probably killed his mother. While we will be unable to determine the validity of the legal charge, I believe his history and current functioning are strongly indicative of a chronic schizophrenic adjustment. He has apparently been deteriorating for a number of years and will consequently require some period of time for readjustment.

DIAGNOSTIC IMPRESSION: Schizophrenic Reaction, Paranoid or Chronic Undifferentiated Type.

A May 6, 1969 staff meeting report signed by Acting Superintendent, Dr. Lazaro, stated:

> The patient is very suspicious. He thinks people talk about plots against him. Patient also has a history of having been at Huntington State Hospital while at the county jail there. Intellectual functioning reveals the patient is functioning within the average range. We feel this patient is psychotic and his judgment is rather impaired.

DIAGNOSIS: Schizophrenic Reaction, Chronic Undifferentiated Type 295.90.

RECOMMENDATION: Further hospitalization.

After hospitalization through September, 1969, Dr. Larumbe, Staff Physician, wrote to the court:

> We feel that this patient was psychotic, suffering from a schizophrenic reaction, of a paranoid type. He is now out of his depression and is in good re-

---

2. This order was made pursuant to former W.Va.Code, 62–3–9 that was declared unconstitutional in *State ex rel. Walker v. Jenkins*, 157 W.Va. 683, 203 S.E.2d 353 (1974), and replaced by W.Va.Code, 27–6A–1, *et seq.*

mission. He is no longer psychotic and is mentally competent to stand trial. You may call for Mr. Bias at your earliest convenience, at which time we will require an order for his release.

Dr. Albert Recio, psychiatrist, diagnosed and recommended in March, 1970:

DIAGNOSIS: Taking into consideration the distortion of thought content, disorganization of personality, misinterpretation of reality, the diagnosis is: *Schizophrenia Paranoid Type, 295.3, Paranoid Personality Disorder, 301.0,* and *Explosive Personality Disorder, 301.3.*
RECOMMENDATION: I recommend that this patient be placed in a maximum security ward at the State Mental Hospital, for total supervision and total rehabilitation.

John W. McBride, Clinical Psychologist, interviewed Bias at the same time and reported:

It is the initial psychological impression that this is an emotionally unstable personality with paranoid and sociopathic traits who is presently suffering from a gross stress reaction of near-psychotic proportions which tends to best fit the Ganser syndrome. Psychologically, his needs appear to be for total supervision and total rehabilitation, and I recommend that placement in the security ward in a state mental hospital be considered.

Dr. Brewer concurred in Dr. Recio's report at that time.

When reevaluated in December, 1973, a report by Dr. Kessel and Dr. Recio concluded:

DIAGNOSIS: Take into consideration his past psychiatric history and his behavior in the jail. It is the opinion of this office that the same diagnoses as stated in 1970 be applied today. It was impossible to establish any useful rapport which could

indicate any change of his past mental disorder. The patient was extremely uncooperative, evasive, and refused to answer any questions asked by Dr. Kessel or myself in any way.

RECOMMENDATION: The patient manifested anxiety and aggressive tendencies, but there was no indication of any overt psychosis. It is the opinion of this office that the patient's mental condition is so deteriorated, his comprehension is nill. His insight and judgment are nill, and he would be unable to stand trial. This patient should be considered extremely dangerous; therefore, it is the recommendation of this office that he be confined to maximum security establishment such as Spencer State Hospital.

■ Little of this psychiatric evidence was made available to the court and jury. We believe that any competent criminal attorney would have attempted to bring this information to a court's and jury's attention. *See Scott v. Mohn,* 165 W.Va. 393, 268 S.E.2d 117, 120 (point 5) (1980).

■ We cannot imagine a clearer case for an insanity defense. Fourteen professionals (physicians, psychiatrists, and psychologists) had examined Bias by court order. It was the unanimous opinion of all these professionals that he was mentally ill, and an overwhelming majority found him to be psychotic. Defense counsel subpoenaed two psychologists and two medical doctors,[3] one of whom did not appear at the trial. Medical records from Weston State Hospital, where Bias was committed by court order, were not subpoenaed. Huntington State hospital records were subpoenaed but not offered as evidence.[4] Three court orders finding Bias incompetent to stand trial and committing him to state hospitals were not offered. The two jailers who moved the court to examine Bias were

**3.** Defense counsel asserted he could not locate other physicians and psychiatrists who examined Bias. Bias' appellate counsel with little effort found at least eight of them and had leads on more.

**4.** Hospital records may be admissible as records kept in ordinary course of business if verified by their custodian or supervisor. *Tedesco v. Weirton General Hospital,* 160 W.Va. 466, 235 S.E.2d 463 (1977). *Accord,* Federal Rules of

Evidence, Rule 803(6) and Advisory Committee Notes:

"... Other federal decisions, however, experienced no difficulty in freely admitting diagnostic entries. *Reed v. Order of United Commercial Travelers,* 123 F.2d 252 (2d Cir.1941); *Buckminster's Estate v. Commissioner of Internal Revenue,* 147 F.2d 331 (2d Cir.1944); *Medina v. Erickson,* 226 F.2d 475 (9th Cir.1955); *Thomas v. Hogan,* 308 F.2d 355 (4th Cir.1962); *Glawe v. Rulon,* 284 F.2d 495 (8th Cir.1960). In the state

not questioned or called as witnesses. His former attorneys[5] who moved that he be mentally examined were neither called nor consulted. Defense counsel did not hire a psychiatrist to give an opinion about Bias' mental condition over the years and the likelihood that he was psychotic at the time of the offense, and was incapable of conforming his behavior to the law, or of knowing right from wrong.

The lawyer tried to present an insanity defense, but his verve and commitment to it can be garnered from his opening statement to the jury:

> The evidence will also show that Mr. Bias has had a long record of mental illness. The record will show based upon reports from Huntington State Hospital that my client has been in and out of mental institutions since at least 1965 and not necessarily by virtue of him wanting to check in. He has been committed by Mental Hygiene Commissioners and by the Court before.
>
> So I anticipate *a possible minor defense* that may be brought up in this case is insanity. Record, page 236 (emphasis ours).

Defense counsel had so inadequately prepared this insanity defense that he did not subpoena defense medical and psychological witnesses until the first day of trial, requiring them to attend the next day.

■ Defendant is entitled to accurate instructions on the burden of proof in insanity cases, and the disposition of a defendant found insane.

> "There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable

doubt that the defendant was sane at the time of the offense." Syllabus Point 2, *State v. Milam*, 163 W.Va. 752, 260 S.E.2d 295 (1979). Syllabus Point 2, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981).

"In any case where the defendant relies upon the defense of insanity, the defendant is entitled to any instruction which advises the jury about the further disposition of the defendant in the event of a finding of not guilty by reason of insanity which correctly states the law ...." Syllabus Point 2, *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980). Syllabus Point 4, *State v. Jackson*, 171 W.Va. 329, 298 S.E.2d 866 (1982).

■ He should also have had a pretrial *in camera* suppression hearing on his confession. Syllabus Point 1, *State v. Jackson, supra;* Syllabus Point 5, *State v. Daggett, supra.*

Bias is entitled to a reversal of his conviction.[6]

Reversed.

---

courts, the trend favors admissibility. *Borucki v. MacKenzie Bros. Co.*, 125 Conn. 92, 3 A.2d 224 (1938); *Allen v. St. Louis Public Service Co.*, 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022 (1956); *People v. Kohlmeyer*, 284 N.Y. 366, 31 N.E.2d 490 (1940); *Weis v. Weis*, 147 Ohio St. 416, 72 N.E.2d 245 (1947). In order to make clear its adherence to the latter position, the rule specifically includes both diagnoses and opinions, in addition to acts, events, and conditions, as proper subjects of admissible entries."

**5.** Appellate counsel states they are all still practicing in Logan County.

**6.** The prosecution and court may agree that another trial is a waste of judicial resources, and Bias was obviously not criminally responsible. Syllabus, *State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981).