327 S.E.2d 388

**John R. TUCKER**

v.

**Manfred HOLLAND, Warden, West Virginia Penitentiary.**

**Case No. 16549.**

Supreme Court of Appeals of West Virginia.

March 1, 1985.

---

Larry Harless, Morgantown, for petitioner.

Mary Rich Maloy, Asst. Atty. Gen., Charleston, for respondent.

McGRAW, Justice:

This is an original proceeding in habeas corpus in which the petitioner, John R. Tucker, contends that his attorney's conduct with respect to his aborted entry of a plea in his criminal action denied him effective assistance of counsel. Specifically, the petitioner complains that his attorney advised him to offer a plea which had not been agreed upon by the prosecution and refused to approach the court to tender the plea desired by the petitioner and agreed upon by the prosecution in contravention to the petitioner's clear instructions following the court's rejection of this unilateral plea. We agree that these lapses in representation denied the petitioner effective assistance of counsel and, accordingly, we grant the writ.

On September 22, 1982, the petitioner was indicted in the Circuit Court of

Raleigh County for first degree arson[1] in connection with a marital dispute which resulted in the destruction of his rented mobile home. The petitioner retained counsel to represent him in this matter and in collateral divorce and bankruptcy proceedings. Because one issue in the petitioner's bankruptcy proceeding was the dischargeability of the amount owed in connection with the destruction of the mobile home,[2] a tension between the petitioner's potential criminal liability and potential civil liability arose which adversely affected his representation by retained counsel.[3]

Much of the negotiations in the petitioner's criminal proceedings revolved around the issue of restitution. The petitioner employed a private investigator to determine the value of the mobile home and attempt to make restitution for its loss. Approximately one month after his indictment, the petitioner, in connection with plea negotiations, tendered a check for five thousand dollars as payment for the loss of the mobile home. Despite the fact that this amount was two thousand dollars more than the appraised value of the mobile home, however, this offer was rejected.

Even though the petitioner's offer of restitution was rejected, plea negotiations continued between his attorney and the prosecuting attorney's office. From testimony at post-trial and habeas corpus proceedings below, however, it appears that a final agreement was not reached until minutes before the petitioner's plea hearing on November 15, 1982. Although the issue of restitution remained unresolved, the prosecuting attorney's office agreed to permit the petitioner to plead guilty to third degree arson.[4]

Unfortunately for the petitioner, his attorney did not advise him to enter a guilty plea, but told him to offer a plea of nolo contendere in order to preclude introduction of the plea in collateral bankruptcy proceedings.[5] His attorney testified that a

---

1. West Virginia Code § 61-3-1 (1984 Replacement Vol.) provides that, "Any person who wilfully and maliciously sets fire to or burns or causes to be burned ... any dwelling house ... shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years."

2. Section 523(a)(6) of the Bankruptcy Code provides that, "A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1982).

3. The constitutional right to qualitatively sufficient representation in criminal actions is not diminished because retained rather than appointed counsel is involved. As the United States Supreme Court stated in *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333, 344 (1980):

   A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers. (Footnotes omitted).

   *See also* ABA Standards for Criminal Justice § 4-3.9 (2d ed. 1980) ("Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.")

4. West Virginia Code § 61-3-3 (1984 Replacement Vol.) provides that, "Any person who wilfully and maliciously sets fire to or burns or causes to be burned ... any personal property of any class or character, (such property being of the value of not less than fifty dollars and the property of another person), shall be guilty of arson in the third degree and upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than three years."

5. Rule 11(e)(6)(B) of the West Virginia Rules of Criminal Procedure provides that, "Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: ... A plea of nolo contendere." *See also* Fed.R.Crim.P. 11(e)(6)(B).

plea of nolo contendere was never discussed with the prosecuting attorney's office, and that this plea was never discussed with the petitioner until moments before his plea hearing, stating that "I think we just did it that last moment." As a result of this unilateral eleventh hour maneuvering on the part of the petitioner's attorney, the following colloquy transpired at the plea hearing:

THE COURT: What have you got this morning?

MR. KING: The next matter is the State of West Virginia versus John Tucker, and I believe he's present with his attorney.

THE COURT: Are you John Tucker?

THE DEFENDANT: Yes, sir.

THE COURT: All right, come up. Have you got a copy of the indictment?

MR. PECORA: Yes, Your Honor, I do.

THE COURT: You're charged with first-degree arson, Indictment 82–F–641, do you know what you're charged with?

THE DEFENDANT: Yes, sir.

THE COURT: What is it?

THE DEFENDANT: First-degree arson.

THE COURT: What is first-degree arson?

THE DEFENDANT: It carries a penalty of two to twenty years.

THE COURT: No. What is it?

THE DEFENDANT: Burning a dwelling house.

THE COURT: What is the penalty?

THE DEFENDANT: Two to twenty years.

THE COURT: What are you pleading guilty to?

THE DEFENDANT: Third-degree arson.

MR. PECORA: No, he's not, Your Honor. He's pleading nolo contendere.

THE DEFENDANT: Nolo contendere.

THE COURT: No, he's not. He's going to plead to the indictment.

MR. PECORA: We can't plead to the— we'll have to withdraw our plea, Your Honor, at this point because there's other matters pending.

THE COURT: I don't care what's pending, he's not going to plead nolo contendere to this charge.

MR. PECORA: Well, he's not pleading guilty then, Your Honor. We'll have to withdraw it and ask for a trial.

THE COURT: Whatever you say. Let me see both attorneys. You've reduced this charge already to third-degree and I'm not taking no nolo to that.

MR. PECORA: Okay, I understand, Your Honor, but I have to represent my client the best—

THE COURT: I don't care what you have to represent. I'm just telling you the Court's not going to take it.

MR. PECORA: Okay. Well, we stand by your ruling.

THE COURT: Well, you haven't any choice but to stand by my ruling.

MR. PECORA: Well, we withdraw our plea then.

THE COURT: You didn't enter a plea. You haven't got one to withdraw.

MR. PECORA: We ask that it be put on the docket.

THE COURT: For Thursday.

On Thursday, November 18, 1982, the petitioner was tried and convicted of first degree arson, and sentenced to a two to twenty year prison term.

The petitioner's attorney testified that the petitioner was extremely upset following the plea hearing, stating that, "John was very upset, he wanted to get it over with." The petitioner testified that, immediately following the aborted plea, while still in the courtroom, "I said, 'I want that one-to-three year sentence.'" The petitioner stated that his attorney responded, "[W]e'll talk about this outside." Once outside the courtroom, in a corridor of the courthouse, the petitioner testified that, "I told Mr. Pecora to get back to the Judge and set the deal up again." He stated that his attorney replied that, "[T]he Judge was upset and he wasn't going to bother him." The petitioner recalled that, "I told him I didn't care how upset the Judge was, I was the one that was upset, and I was the one that had to do the twenty years." This

testimony was corroborated by the petitioner's father, who was present outside the courtroom during this conversation, who testified that, "John asked Mr. Pecora to come back in here and ask the Judge to see if the Judge would let him plead guilty to third-degree arson," and by the investigator employed to negotiate restitution, who was also present, and who testified that, "[H]e tried to get him to go back into the courtroom and enter a different plea ... and Mr. Pecora said he wasn't going to go back in there."

The attorney's testimony with respect to these post hearing conversations has been inconsistent. Initially, at a post-trial hearing, the attorney's response to the question, "Did he come back to you and tell you that he wanted to know if the Judge would accept his plea of guilty to third-degree arson?" was "He may have said that but I don't recall, but John wanted to get it over with one way or the other." Later, at a habeas corpus hearing below, prior to corroborating testimony by the petitioner's father and the private investigator, the attorney again testified that, "[H]e may have asked me to go back and see the Judge to plead guilty, because John was very upset, he wanted to get it over with." Finally, in an affidavit submitted in connection with this proceeding, the attorney states that, "Immediately after Judge Canterbury rejected the nolo contendere plea, Tucker asked me to approach the judge about a guilty plea to third-degree arson. However, at that moment, the judge was attending to other matters, and I could tell that the judge did not want to hear any more from us right then." Therefore, it appears that the petitioner did request that his attorney approach the court to tender his plea of guilty to third degree arson, and that his attorney refused because the judge was irritated at what had just transpired.

■ Three separate standards have been developed in this jurisdiction to be applied in determining the constitutional sufficiency of legal representation rendered in three separate criminal action contexts. First, the basic test for measuring the adequacy of assistance of counsel is found in Syllabus Point 19 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), where this Court held that:

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.[6]

Second, tactical decisions on the part of the criminal counsel are subject to a lower level of scrutiny, as this Court held in Syllabus Point 21 of *State v. Thomas*, "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."[7] Finally, in the plea bargain-

---

6. *See also*, Syl. pt. 3, *State v. Cabalceta*, 174 W.Va. 240, 324 S.E.2d 383 (1984); Syl. pt. 1, *State v. Tadder*, 173 W.Va. 187, 313 S.E.2d 667 (1984); Syl. pt. 2, *State v. Bogard*, 173 W.Va. 118, 312 S.E.2d 782 (1984); Syl. pt. 1, *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144 (1983); Syl. pt. 1, *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776 (1983); Syl. pt. 4, *State v. Mullins*, 171 W.Va. 542, 301 S.E.2d 173 (1982); Syl. pt. 3, *State v. Jacobs*, 171 W.Va. 300, 298 S.E.2d 836 (1982); Syl. pt. 6, *State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461 (1982); Syl. pt. 4, *State v. Baker*, 169 W.Va. 357, 287 S.E.2d 497 (1982); Syl. pt. 6, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982); Syl. pt. 4, *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981); Syl. pt. 1, *Carrico v.*

*Griffith*, 165 W.Va. 812, 272 S.E.2d 235 (1980); Syl. pt. 3, *State v. Foddrell*, 165 W.Va. 540, 269 S.E.2d 854 (1980); Syl. pt. 2, *Scott v. Mohn*, 165 W.Va. 393, 268 S.E.2d 117 (1980); Syl. pt. 2, *State v. Bradley*, 164 W.Va. 68, 260 S.E.2d 830 (1979); Syl. pt. 1, *Cannellas v. McKenzie*, 160 W.Va. 431, 236 S.E.2d 327 (1977); Syl. pt. 1, *State ex rel. Wine v. Bordenkircher*, 160 W.Va. 27, 230 S.E.2d 747 (1976); Syl. pt. 1, *Carter v. Bordenkircher*, 159 W.Va. 717, 226 S.E.2d 711 (1976).

7. *See also* Syl. pt. 4, *State v. Cabalceta, supra;* Syl. pt. 3, *State v. Bogard, supra;* Syl. pt. 2, *State v. Bias, supra;* Syl. pt. 4, *State v. Jacobs, supra;* Syl. pt. 5, *State v. Riser, supra;* Syl. pt. 3, *State*

ing context, this Court held in Syllabus Point 2 of *State ex rel. Burton v. White*, 163 W.Va. 276, 256 S.E.2d 424 (1979), that, "Before an initial finding will be made that counsel acted incompetently with respect to advising on legal issues in connection with a guilty plea, the advice must be manifestly erroneous."

■ We note that, "A charge of ineffective assistance of counsel is not one to be made lightly. It is a serious charge which calls into question the integrity, ability and competence of a member of the bar." *State v. Baker*, 169 W.Va. 357, 287 S.E.2d 497, 502 (1982). Furthermore, "We are very cautious about finding that counsel has been ineffective."[8] *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776, 779 (1983). Finally, as this Court held in Syllabus Point 22 of *State v. Thomas*, "One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence."[9]

Rule 11(e)(1)(A) of the West Virginia Rules of Criminal Procedure provides that:

> The attorney for the State and the attorney for the defense ... may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to ... a lesser or related offense, the attorney for the State will ... [m]ove for dismissal of other charges.

Plea negotiations did occur between petitioner's counsel and the prosecuting attorney's office. The petitioner's attorney testified, however, that the plea of nolo contendere was never mentioned. Although he concedes that submission of the plea of nolo contendere was not agreed upon, he defends by stating that, "[T]he offer was just for Tucker to 'plead,' not to specifically plead 'guilty.'"

Several factors weaken counsel's argument that he believed the prosecution had implicitly consented to a plea of nolo contendere. First, as previously noted, he admits that the plea was never mentioned in his discussions with the prosecution. Second, it is highly unlikely that the prosecution would have consented to the entry of a plea which would have sought to avoid restitution where restitution, although not part of the final plea agreement, was a major bargaining point in plea negotiations. Third, as noted by the trial court at the plea hearing, the charges had already been reduced from first to third degree arson, with the only definite benefit to the State being, given the overwhelming evidence against the petitioner, avoidance of the time and expense associated with trial. Fourth, the judge apparently understood that the petitioner was to plead guilty when he inquired, "What are you pleading guilty to?" Finally, we note the customary connotation of the phrase "plea to" and the extraordinary nature of the plea of nolo contendere.

With respect to the extraordinary nature of a plea of nolo contendere, we note that, in addition to counsel's attempted evasion of prosecutorial approval, his actions also sought to avoid requisite judicial participation. Rule 11(b) of the West Virginia Rules of Criminal Procedure provides that, "A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." *See also State ex rel. Clark v. Adams*, 144 W.Va. 771, 778–83, 111 S.E.2d 336, 340–43 (1959); Annot., 89 A.L.R.2d 540, § 14 (1963); 22 C.J.S. *Criminal Law* § 425(3) (1961); 21 Am.Jur.2d *Criminal Law* § 494 (1981). As this Court recently stated in *Myers v. Frazier*, 173 W.Va. 658, 319

*v. Baker, supra;* Syl. pt. 7, *State v. Hatfield, supra;* Syl. pt. 5, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981); Syl. pt. 3, *State v. Watson*, 164 W.Va. 642, 264 S.E.2d 628 (1980); Syl. pt. 2, *State ex rel. Wine v. Bordenkircher, supra;* Syl. pt. 4, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975).

8. *See also State v. Jacobs*, 298 S.E.2d at 842; *State v. Hatfield*, 286 S.E.2d at 413; Syl. pt. 2, *Carrico v. Griffith, supra;* Syl. pt. 3, *State ex rel. Wine v. Bordenkircher, supra*.

9. *See also State ex rel. Wine v. Bordenkircher*, 160 W.Va. at 30–31, 230 S.E.2d at 750.

S.E.2d 782, 789 (1984), "Rule 11(b) makes it clear that a defendant has no absolute right to enter a nolo contendere plea." The petitioner's attorney failed to obtain the court's permission before attempting to enter a plea of nolo contendere; failed to insure that the views of the parties would be heard in order to provide a foundation for acceptance of the plea; and failed to demonstrate in what manner the interest of the public in the effective administration of justice would be served. Instead, after the court refused to consent to entry of the plea of nolo contendere, counsel unilaterally withdrew the plea immediately without consulting his client or without attempting to demonstrate the appropriateness of the plea.

Counsel's lack of candor with the prosecution and the trial court extended to his communications with the petitioner. Although the petitioner was informed of the consequences of a plea of nolo contendere, he was not informed that this plea had neither been agreed upon by the prosecutor nor anticipated by the judge. Standard 4–6.2(a) of the ABA Standards for Criminal Justice (2d ed. 1980) provides that, "In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and all proposals made by the prosecutor should be communicated promptly to the accused." As the commentary to this standard notes:

> Because plea discussions are usually held without the accused being present, the lawyer has the duty to communicate fully to the client the substance of the discussions. It is important that the accused be informed of proposals made by the prosecutor; the accused, not the lawyer, has the right to decide on prosecution proposals, even when a proposal is one that the lawyer would not approve. If the accused's choice on the question of a guilty plea is to be an informed one,

the accused must act with full awareness of the alternatives, including any that arise from proposals made by the prosecutor.

ABA Standards for Criminal Justice 4–6.2, at 4.74 (2d ed. 1980).

In the instant proceeding, the petitioner was misled by his attorney into believing that the prosecution had consented to his pleading nolo contendere to a lesser included charge of third degree arson, when in fact it had only agreed to permit him to plead guilty. This deprived the petitioner of his right to make an informed choice concerning the actual offer communicated by the prosecutor.[10] Had he been informed, as his attorney argues, that the prosecution had only agreed to allow him to "plead" to third degree arson, which might be interpreted to permit him to tender a plea of nolo contendere, but that such plea might be opposed by either the prosecution or the trial court when tendered, the petitioner might have chosen to gamble that such a plea would be accepted. His attorney, however, took this gamble with his liberty for him, and counseled the petitioner to tender a plea without notifying him of the risks involved. In one reprehensible maneuver, the petitioner's attorney managed to violate his duties to the court, the prosecution, and his client.

In addition to counsel's unfortunate conduct resulting in the rejection of the petitioner's attempted plea, his subsequent actions also denied the petitioner effective assistance of counsel. As previously noted in the commentary to Standard 4–6.2(a) of the ABA Standards for Criminal Justice (2d ed. 1980), decisions concerning the entry of particular pleas rest ultimately with the accused. Ethical Consideration 7–7 of our Code of Professional Responsibility (1982 Replacement Vol.) provides that:

---

**10.** In *Lyles v. State,* 178 Ind.App. 398, 401–02, 382 N.E.2d 991, 993–94 (1978), the court reversed and remanded the conviction of a defendant where his attorney failed to communicate the prosecution's plea offer and was subsequently sentenced to ten years even though the prosecution had offered to recommend a one to five year sentence if the defendant plead guilty to a

lesser included offense. *See also United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir.1982); *United States ex rel. Simon v. Murphy,* 349 F.Supp. 818, 823–24 (E.D.Pa.1972); *State v. Simmons,* 65 N.C.App. 294, 300, 309 S.E.2d 493, 497 (1983); *People v. Whitfield,* 40 Ill.2d 308, 311–12, 239 N.E.2d 850, 852 (1968); Annot., 8 A.L.R.4th 660 (1981).

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer.... A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.

Similarly, Standard 14–3.2(a) of the ABA Standards for Criminal Justice (2d ed. 1980) provides that, "Defense counsel ... should ensure that the decision whether to enter a plea of guilty or nolo contendere is ultimately made by the defendant."

After the rejection of the petitioner's tendered plea of nolo contendere, his attorney most recently states that, "Tucker asked me to approach the judge about a guilty plea to third-degree arson. However, at that moment, the judge was attending to other matters, and I could tell that the judge did not want to hear any more from us right then." Standard 4–1.(b) of the ABA Standard for Criminal Justice (2d ed. 1980) provides that, "The basic duty the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate with courage, devotion, and to the utmost of his or her learning and ability and according to law." As the commentary to this standard notes:

Advocacy is not for the timid, the meek, or the retiring. Our system of justice is inherently contentious, albeit bounded by the rules of professional ethics and decorum, and it demands that the lawyer be inclined toward vigorous advocacy. Nor can a lawyer be halfhearted in the application of his or her energies to a case. Once a case has been undertaken, a lawyer is obliged not to omit any essential honorable step in the defense....

ABA Standards for Criminal Justice 4–1.1, at 4.8 (2d ed. 1980). One cannot be more eloquent in response to counsel's excuse for failing to approach the trial court than the petitioner who testified that, "I told him I didn't care how upset the Judge was, I was the one that had to do the twenty years."

■ This case demonstrates that conflicts may arise not only in the representation of multiple clients, *see State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 489–92, 212 S.E.2d 69, 75–76 (1975); Code of Professional Responsibility, Ethical Considerations 5–14, 5–15, 5–16, and 5–17, Disciplinary Rule 5–105 (1982 Replacement Vol.), but also in the representation of single clients with multiple interests. We recognize that an accused may choose to balance his liberty interests against his property interests in a particular manner. We refuse to recognize, however, that such balancing may be performed by his attorney without his client's consent or knowledge. Counsel's actions in the instant proceeding ventured beyond the bounds of strategy, tactics or arguable courses of conduct, and beyond the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law. The advice given to the petitioner with regard to his plea was not so much manifestly erroneous as it was manifestly false and misleading. Consequently, we conclude that the petitioner was denied his constitutional right to effective assistance of counsel, and that relief should therefore be granted.

■ The petitioner seeks specific performance of the actual plea agreement, noting the "necessary and proper" relief language of our habeas corpus statute, West Virginia Code § 53–4A–7(c) (1981 Replacement Vol.). Although there may have been an agreement between the prosecutor and the petitioner's attorney to allow the petitioner to plead guilty to third degree arson, as we noted in Syllabus Point 5 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), "West Virginia Rules of Criminal Procedure, Rule 11, gives a trial

court discretion to refuse a plea bargain."[11] We note from the colloquy that transpired at the plea hearing that the trial court appeared inclined to accept the petitioner's plea of guilty to third degree arson. Such inclination, however, is insufficient to warrant specific performance. Perhaps after the trial court discovered that the issue of restitution had not been resolved, it would have rejected the plea for that reason.[12]

Accordingly, we award a writ of habeas corpus discharging the petitioner, with directions to the trial court to permit tender, for consideration by the court, of a plea of guilty to third degree arson.

Writ granted with directions.

---

**11.** *See also* Syl. pt. 2, *Myers v. Frazier, supra; State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268, 277 (1983); *State ex rel. Roark v. Casey,* 169 W.Va. 280, 286 S.E.2d 702, 704 (1982); *State v. Wayne,* 162 W.Va. 41, 43, 245 S.E.2d 838, 840–41 (1978); Syl., *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932).

**12.** We note that following the petitioner's conviction, he entered into an agreement to make restitution for the loss of the mobile home in the amount of six thousand dollars to be paid in monthly installments of two hundred fifty dollars, and that, as of August 12, 1984, the balance on this debt had been reduced to three thousand seven hundred dollars. We further note that he has already served over fourteen months of his two to twenty year sentence. Both of these factors may properly be considered by the trial court in determining whether to accept tender of his guilty plea to third degree arson.