STATE *ex rel.* RUSSELL WALKER,
WILLARD MILLER, HARRY SKIDMORE,
LLOYD SKIDMORE, ROBERT BELL,
PAUL BEEGLE, LORENE HOLIDAY,
GARLAND C. HUDSON, *and* ARLIE DEAL

*v.*

ROBERT JENKINS, *Director of Clinical Services at Spencer State Hospital, Spencer, West Virginia;* A. V. VILLARIN, *Director of Clinical Services at Weston State Hospital, Weston, West Virginia; and* MILDRED MITCHELL-BATEMAN, *Director of the Department of Mental Health of the State of West Virginia*

(No. 13430)

Submitted January 30, 1974.     Decided March 19, 1974.

*Daniel F. Hedges* for relators.

*Chauncey H. Browning, Jr.,* Attorney General, *Phillip D. Gaujot,* Assistant Attorney General, for respondents.

NEELY, JUSTICE:

This original proceeding in *habeas corpus* was brought by petitioner Russell Walker and eight other petitioners to challenge the constitutional validity of their confinement in various mental institutions of the State of West Virginia. Upon submission of the case, counsel for petitioners moved that the petitioner, Garland C. Hudson, be dismissed from the proceeding for the reason that he had already been discharged from his confinement and also moved that the petitioner, Paul Beegle, be severed from the instant proceeding and his case treated separately. These motions to dismiss or sever were granted. As the *West Virginia Rules of Civil Procedure* do not apply to proceedings in *habeas corpus* (Rule 81, *R.C.P.*), Rule 23, *R.C.P.,* authorizing class actions does not apply to proceedings in *habeas corpus.* Accordingly, all of the petitioners, except Russell Walker, *i.e.,* Willard Miller, Harry Skidmore, Lloyd Skidmore, Robert Bell, Lorene Holiday, Garland C. Hudson, and Arlie Deal are

dismissed from this proceeding without prejudice, and Robert Jenkins is therefore dismissed as a party defendant.

Petitioner Russell Walker is currently confined in Weston State Hospital pursuant to an April 1973 court order by the Circuit Court of Lewis County which committed petitioner under Chapter 62, Article 3, Section 9 of the *Code of West Virginia*, 1931, as amended, which relates to the commitment and discharge of mentally ill or mentally defective persons charged with a crime. The petitioner is a seriously retarded individual who was charged with the crime of breaking and entering, but the State does not contradict that he entered a residence from which his family had recently moved under the misapprehension that he was entering his own house.

The court's determination to commit the petitioner was made exclusively on the basis of two reports by physicians. The petitioner is thirty-one years old and had lived with his family all of his life. Two members of his family are psychiatric aides at Weston State Hospital and are, therefore, qualified to take care of the petitioner; however, in spite of the innocuous nature of the alleged crime, and the ideal family situation to which petitioner may return, the petitioner remains committed to the Weston State Hospital. Petitioner alleges that his commitment pursuant to *Code,* 62-3-9, as amended, is in effect a lifetime commitment, as that section authorizes discharge only upon recovery, and the petitioner is so severely retarded that he will never recover. The petitioner squarely challenges the constitutional validity of Chapter 62, Article 3, Section 9, as amended; and Chapter 27, Article 6, Section 8, as amended, of the *Code of West Virginia,* 1931. *Code,* 62-3-9, as amended, provides as follows:

> "Whenever any person charged with or con-
> victed of a crime, or acquitted thereof because of
> his mental condition, is thought to be mentally
> ill or mentally defective, the judge of the court

of record in which he was so charged, convicted, or acquitted, may on his own motion inquire into the mental condition of such person. The judge of such court or the judge of any other court of record of the county in which such person may be found, shall make such inquiry upon the application of an inferior court not of record in which such person was so charged, convicted, or acquitted, or upon the application of the official in charge of any penitentiary, prison, jail or lockup in which such person may be confined. The judge shall appoint two physicians to examine such person and report in writing on his mental condition. If on the basis of the reports the judge is satisfied that such person is mentally ill or mentally defective, he may order that such person be committed to a State institution. The sheriff or other officer in charge of such person shall immediately deliver him to the superintendent of the institution to which he was committed, and it shall be the duty of the superintendent to admit and care for him. When any person committed as provided in this section has been found by the superintendent not to be mentally ill or mentally defective, or whenever such person has recovered, the superintendent shall give notice thereof to the judge of the court by whose order he was committed and shall deliver him to the proper officer upon the order of the court. If a person committed as provided in this section is awaiting indictment or trial, or has been arraigned or is being tried, proceedings against him shall be stayed until his recovery. Upon his recovery the court shall order that he be returned for the disposition of the charges against him. Thereupon the court shall proceed to dispose of the case as if there had been no commitment. If the person committed is a prisoner serving sentence, the time during which he is in the institution shall be computed as part of the time for which he was sentenced."

Code, 27-6-8, as amended, provides as follows:

"When any person charged with crime confined in a state hospital has recovered from his mental illness, the superintendent shall give notice

thereof to the clerk of the court by whose order he was confined and deliver him to the proper officer upon order of the court.

"When any person convicted of a crime and sentenced to the penitentiary confined in a state hospital shall have recovered from such mental illness, he shall be forthwith returned to prison. Any time spent in such state hospital shall be computed as part of the term for which he was sentenced. If the sentence of such convict expires while such convict is in the state hospital, then upon his recovery he shall be discharged from said state hospital."

The petitioner contends that his constitutional right to due process guaranteed by Article III, Section 10 of the *Constitution of the State of West Virginia* and the Fourteenth Amendment to the *Constitution of the United States* has been violated because he has been subjected to the "grievous loss" of incarceration by virtue of proceedings in which he: (a) was not afforded proper notice; (b) was not afforded an adequate hearing; (c) was not permitted to confront and cross-examine witnesses against him or call witnesses in his own behalf; (d) was not appointed counsel to represent him; and (e) was not afforded a right of meaningful appeal. He further asserts that he has been denied equal protection of the laws because persons who are neither dangerous to themselves nor to others, but who are mentally retarded or mentally ill, are subject to lifetime confinement as a consequence of committing a criminal violation which, if committed by a normal person, would be punishable by a less severe prison or jail term. Petitioner further contends that under this Court's recent ruling in *State ex rel. Hawks v. Lazaro,* 157 W.Va. 417, 202 S.E.2d 109 (1974), his rights to substantive due process have been violated, as the State is unable to demonstrate a reasonable relationship between his confinement and any legitimate state interest which can be achieved by that confinement.

The Attorney General of the State of West Virginia on behalf of the State admits that this case is squarely controlled by the cases of *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972) and *Hawks v. Lazaro, supra*. In the *Jackson* case, the petitioner, Theon Jackson, was a mentally defective deaf mute with a mental level of a preschool child. He was unable to read, write, or otherwise communicate except through limited sign language. Jackson was charged with separate robberies of two women, and after his plea of not guilty in the trial court, the state court set in motion the Indiana procedures for determining his competency to stand trial. The Indiana procedure was very similar to the West Virginia procedure provided by *Code,* 62-3-9, as amended, and the Indiana court received a joint written report and oral testimony from two doctors who testified that it was extremely unlikely that the petitioner could ever learn to read, write or develop any proficiency in sign language. On this evidence, the trial court found that Jackson lacked comprehension sufficient to make his defense and ordered him committed to the Indiana Department of Mental Health until such time as that department should certify to the court that the defendant was sane. The United States Supreme Court held that by subjecting the petitioner to a more lenient standard of commitment and to a more stringent standard of release than those generally applicable to mental incompetents not charged with offenses, petitioner was condemned to permanent institutionalization without the proof necessary for civil commitment or the opportunity for release afforded those civilly committed which deprived petitioner of equal protection of the laws. The court also held that Indiana's indefinite commitment of a criminal defendant solely because of his lack of capacity to stand trial violated due process, and that a defendant cannot be held more than a reasonable time necessary to determine whether there is a substantial probability that he will become competent in the foreseeable future, and to treat him if such recovery appears reasonably likely.

In the recent case of *Hawks v. Lazaro, supra,* this Court held that before a person can be involuntarily committed under the civil commitment statutes, he must be afforded a full range of due process rights, among which are adequate notice, a fair and impartial hearing, the right to cross-examine and confront witnesses, the right to adequate representation by counsel, and the right to a meaningful appeal.

The situation presented by the statutes authorizing commitment of those mental incompetents accused of crime differs in one essential respect from the situation presented in *Hawks* because the State has a legitimate interest in determining the competency of a defendant to stand trial. Should a defendant be incompetent to stand trial, the State needs to be afforded an opportunity to restore the defendant's competency so that he may stand trial. In the *Jackson* case the Supreme Court held that the State can hold a person for a reasonable period of time to determine his competency, and that it can hold him for a further reasonable period of time for him to recover his competency to stand trial, provided that his continued commitment is justified by progress towards that goal. The Supreme Court did not think it appropriate to prescribe arbitrary time limits in light of differing state facilities and procedures, and this Court is equally reluctant to establish arbitrary periods; however, until the Legislature shall speak to the subject, we hold that a period in excess of sixty days for the purpose of determining competency, or a period in excess of six months for the purpose of causing a defendant to regain his competency is *prima facie* unreasonable. A "reasonable time" has been well defined in the case of *In Re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973) in which the Court said " . . . a reasonable time would be an unspecific time, rather short in duration, necessarily required to effectuate the overriding state interest."

Except to the extent that the State may commit a person for a reasonable period of time to determine

competency and to restore competency, and to the extent that *Code,* 27-6-8, as amended, establishes procedures for transfer of persons convicted of crimes, we hold that *Code,* 62-3-9, as amended, and *Code* 27-6-8, as amended, are unconstitutional. A potential lifetime commitment as a direct result of the commission of a crime exclusively because of mental illness or mental retardation, without a showing by the State that an individual is dangerous either to himself or to others, is a denial of equal protection of the laws. In the *Hawks* case, *supra,* we held that the State can only demonstrate a legitimate interest in the commitment of an individual if that individual is either dangerous to himself or to others. Under the challenged statutes it is not only possible, but highly likely, that a person will be committed to a mental institution for life without any demonstration of danger to himself or to others. Therefore, in order for a person to be committed to a mental institution attendant to a criminal prosecution, it must be demonstrated that a person is either dangerous to himself or to others by evidence which is clear, cogent, and convincing. See discussion of this standard in *Hawks, supra.* In addition he must be afforded all the procedural rights available to those committed under the civil process, among which are included the right to counsel, the right to confrontation of witnesses and presentation of evidence in his own defense, and the right to a meaningful appeal.

Assuming that the petitioner is so severely retarded that he is unable to stand trial, we hold that the State must either bring a civil commitment action against the petitioner or discharge him. Accordingly, the writ of *habeas corpus* prayed for will be granted, subject to a stay of sixty days during which time the State may institute civil commitment proceedings.

*Writ granted.*