352 S.E.2d 52

**STATE of West Virginia**

v.

**Henry BIAS.**

**No. CC 958.**

Supreme Court of Appeals of West Virginia.

Dec. 10, 1986.

---

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellant.

Bradley J. Pyles, Logan, for appellee.

McHUGH, Justice:

Pursuant to *W. Va. R. App. P.* 13 and *W. Va. Code,* 58–5–2 [1967], the Circuit Court of Logan County, West Virginia (the trial court) has certified the following two questions:

(1) Does the trial court lack jurisdiction to try a criminal defendant who was on three occasions between 1969 and 1973 found to be incompetent to stand trial and was committed to a state mental hospital, by virtue of *State ex rel. Walker v. Jenkins,* 157 W. Va. 683, 203 S.E.2d 353 (1974), and by virtue of *W. Va. Code,* 27–6A–2, as effective in 1974?

(2) Does the court lack jurisdiction to try this defendant, by virtue of *W. Va. Code,* 62–3–21 [1959]?

The trial court answered both of these certified questions in the negative. We agree with the trial court's rulings.

I.

A.  THE FACTS: INCOMPETENCY

The defendant, Henry Bias, was indicted in January, 1969 for the murder of his mother in October, 1968. Upon the motion of defense counsel, and after two physicians had found the defendant to be psychotic, the trial court in March, 1969, committed the defendant, for the first time, to a state mental hospital. This commitment was for an indefinite period, that is, until the defendant was determined to be competent to stand trial, as provided by *W. Va. Code,* 62–3–9, then in effect.[1]

Less than six months later, the defendant's psychosis was in remission and the defendant was returned to the Logan County jail to await trial.

Soon thereafter, the defendant's bizarre behavior while in jail prompted the jailer,

---

1. Former *W. Va. Code,* 62–3–9 provided for a court of record to appoint two physicians to examine a criminal defendant and report in writing on his or her mental condition. If the court, on the basis of such reports, was satisfied that the defendant was mentally ill or mentally defective, it was authorized to order the commitment of the defendant to a state mental institution, for an unspecified period of time, for examination and, if necessary, treatment. If the superintendent of the mental institution found the defendant not to be mentally ill or mentally defective, or whenever the defendant recovered, the defendant was to be returned to the committing court. If a criminal defendant committed to a mental institution under this section was awaiting trial, the "proceedings against him [were] stayed until his recovery. Upon his recovery the court [was to] order that he be returned for the disposition of the charges against him. Thereupon the court shall proceed to dispose of the case as if there had been no commitment."

As discussed *infra* in the body of this opinion, *W. Va. Code,* 62–3–9 was held by this Court on March 19, 1974 to be unconstitutional. It was repealed and replaced on July 1, 1974 by *W.Va. Code,* 27–6A–1 to 27–6A–8, also discussed *infra.*

joined by defense counsel, to move the court to have the defendant reexamined for competency. In March, 1970, the defendant was committed, for a second time, to a state mental hospital, until his competency to stand trial was restored.

Between March, 1970 and February, 1971, the defendant escaped four times from the state mental hospital. During that period of time, the defendant's longest uninterrupted period of confinement in the state mental hospital was a little over a month.

The defendant was, however, confined continuously in the state mental hospital for a little over a year, between February, 1971 and February, 1972.

In February, 1972 the defendant escaped for a fifth time from the state mental hospital. Nearly a year and a half later, he was extradited from the State of Indiana when he was found there.

In February, 1974, the trial court, upon the motion of defense counsel, committed the defendant, for the third time, to a state mental hospital, until his competency to stand trial was determined.

Before he was examined by the staff at the state mental hospital, the defendant escaped for a sixth time. He remained free, his whereabouts unknown, for the next five and two-thirds years.

In November, 1979, the defendant was arrested in Logan County when authorities found him there.

The defendant was subsequently found by the trial court to be competent to stand trial, after a twenty-day psychiatric examination and a competency hearing, as provided by *W.Va.Code*, 27–6A–1 and 27–6A–2, as amended.

In May, 1980, a jury found the defendant guilty of first degree murder of his mother, without a recommendation of mercy. The defendant soon thereafter began serving his life sentence in the state penitentiary.

In March, 1983, this Court reversed the defendant's conviction based upon ineffective assistance of counsel. Trial counsel had presented very little of the psychiatric evidence and had otherwise failed to pursue an insanity defense as a reasonably qualified attorney would have done. *See* syl. pt. 5, *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776 (1983).

After this reversal, the defendant was brought from the state penitentiary, in April, 1983, to the Logan County jail to await the new trial. He has remained in the custody of such jail since then.

Thus, the defendant, in the nearly 18 years since his indictment, was confined at one point in a state mental hospital without interruption for a little over one year; was confined in state mental hospitals, with repeated interruptions, for a total of about nine more months; was free during escapes for almost eight years; was in the state penitentiary after conviction for nearly three years; has been in the county jail awaiting a new trial for over three and a half years; and spent the remainder of the time in the county jail awaiting the first trial.

## B. THE FACTS: SPEEDY TRIAL

The defendant asserts that there have been more than three unexcused terms after the term in which the indictment was returned, in violation of his speedy trial rights. The terms in question and the relevant activities during those terms are set forth below.

### September, 1969 term

Upon a finding that the defendant's psychosis was in remission, the defendant was returned, on or about September 24, 1969, to the trial court from the state mental hospital.

### September, 1973 term

On November 14, 1973, the defendant moved for, and the trial court ordered, a psychiatric examination to determine whether the defendant was competent to stand trial.

### September, 1983 term

Upon motion of the defendant, a psychiatrist, Dr. MacCallum, examined the defendant on September 12 and 16, 1983. Dr. MacCallum's report was not received during this term of court.

*January, 1984 term*

Dr. MacCallum's report finding the defendant competent to stand trial (but apparently finding the defendant insane at the time of the offense) was received in March, 1984. On April 19, 1984, the State moved, with the defendant's acquiescence, that Dr. Neilan, a psychiatrist, examine the defendant. The trial court ordered the same on April 25, 1984.

*May, 1984 term*

Dr. Neilan's report finding the defendant competent to stand trial was received on May 29, 1984.

*September, 1984 term*

On October 2, 1984, the defendant filed two motions to dismiss for lack of jurisdiction, raising the same two issues involved in the certified questions now before us, namely, the duration of the defendant's incompetency prior to the trial in 1980 and the alleged violation of the three-term rule. The trial court heard argument of the defendant on October 26, 1984 on the motion involving the duration of the defendant's incompetency prior to the trial in 1980; the State responded to such motion at a hearing on December 14, 1984.

*January, 1985 term*

The trial court filed its opinion and order denying the defendant's motion to dismiss based upon the duration of the defendant's incompetency prior to the trial in 1980. The defendant's motion to dismiss based upon the three-term rule remained pending; the hearing on the same was not held until June 14, 1985, during the May, 1985 term of court, at which time the defendant was prepared to argue his three-term-rule motion. The record reflects some confusion over whether the defendant, until the May, 1985 term of court, had planned to certify to this Court only the one question involv-

ing the duration of the defendant's incompetency prior to the trial in 1980, and hold in abeyance his three-term-rule motion until after we had answered the question on the duration of incompetency prior to the trial in 1980.

## II.

### A. DURATION OF INCOMPETENCY: *WALKER*'S COMMITMENT STANDARDS

■ A person who has been accused of a crime may not be committed involuntarily to a mental institution for an indefinite period of time solely for the purpose of determining and obtaining such person's competency to stand trial.[2] Instead, after a reasonable period of time to determine the accused's competency to stand trial, and if incompetency is found, after a further reasonable period of time for the accused to attain such competency, the State, to satisfy equal protection and procedural due process requirements, must release the accused from *confinement* in the mental institution or commence civil commitment proceedings. In the civil commitment proceedings the State must show by clear, cogent and convincing evidence that the accused, like a person not accused of a crime, is likely to cause serious harm to himself or to others and should, therefore, be committed to a mental institution because of such propensity to do harm. In *State ex rel. Walker v. Jenkins*, 157 W. Va. 683, 203 S.E.2d 353 (1974), *relying upon Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), this Court expressed these principles in syllabus points 1, 3 and 4:

1. Except to the extent that the State is entitled summarily to commit an indi-

---

**2.** In syllabus point 3 of *State v. Swiger*, 175 W.Va. 578, 336 S.E.2d 541 (1985), *quoting* syllabus point 2 of *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled on another point in* syllabus point 4 of *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980), this Court defined "competency to stand trial" as follows: "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.'" This definition is nearly identical to that given in *W.Va.Code,* 27–6A–2(b) [1974, 1979], wherein "competency to stand trial [is] based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial."

vidual charged with a crime for a reasonable time for the purpose of determining his capacity to stand trial, and to continue his commitment for a further reasonable period· of time for the purpose of restoring his competency to stand trial, Chapter 62, Article 3, Section 9, as amended, and Chapter 27, Article 6, Section 8, as amended, of the *Code of West Virginia*, 1931, are unconstitutional.

3. Regardless of prior criminal violations, a person who has not been convicted of a crime cannot be involuntarily committed to a mental institution except for the purpose of determining competency to stand trial or to restore competency to stand trial, unless the State can demonstrate that he is either dangerous to himself or dangerous to others by evidence which is clear, cogent, and convincing.

4. Persons held for longer than a reasonable time pursuant to Chapter 62, Article 3, Section 9 of the *Code of West Virginia*, 1931, as amended, must either be committed under the civil commitment statutes or released.

Until the legislature spoke to the subject, this Court held in *Walker* that a period of confinement in excess of 60 days for the purpose of determining competency, or a period of confinement in excess of six months for the purpose of causing a defendant to regain competency, is *prima facie* unreasonable. 157 W. Va. at 689, 203 S.E.2d at 357. Thus, under *Walker* the maximum period that a criminal defendant could be properly committed involuntarily to a mental institution solely on account of the defendant's incompetency to stand trial was, ordinarily, eight months.

*W.Va.Code*, 62–3–9 was repealed and replaced by *W.Va.Code*, 27–6A–1 to 27–6A–8, effective July 1, 1974. See 1974 *W. Va. Acts*, ch. 66. Under *W.Va.Code*, 27–6A–1(b), there is a twenty-day observation period to determine competency to stand trial, which period may be extended to a forty-day period. Under *W.Va.Code*, 27–6A–2(b), if incompetency is found, there is a six-month improvement period to attain competency, if the court finds in advance that there is a substantial likelihood of attaining competency during the six-month period, which improvement period may be extended to a nine-month period. Thus, under these statutes the maximum period that a criminal defendant may be committed involuntarily to a mental institution solely on account of the defendant's incompetency to stand trial is ten and one-third months.

■ In this case the defendant was committed involuntarily to a state mental hospital, pending his attaining competency to stand trial, without interruption for the one-year period between February, 1971 and February, 1972. This one-year period was *prima facie* unreasonably long under *Walker*, *supra*, and the State has not shown on this record that commitment of the defendant at that time for more than eight months, in light of the then chronic nature of his psychosis, was justified by progress toward attaining competency. Moreover, this one-year commitment period exceeded the maximum period of ten and one-third months allowed under *W.Va. Code*, 27–6A–1 and 27–6A–2, as amended.

In *Walker*, *supra*, the criminal defendant had been confined in the state mental hospital under former *W. Va. Code*, 62–3–9 for about 11 months and was still confined there as incompetent to stand trial when we decided the case. This Court granted his request for habeas corpus relief but stayed his discharge, or release from *custody*, for 60 days to allow the State to exercise its discretion as to whether to institute civil commitment proceedings. The opinion is silent on whether further criminal prosecution was barred, for civil commitment for life was likely.

The unusual facts of the case presently before us, however, require a decision on whether pending felony charges must be dismissed and further prosecution on the same forever barred once it has been determined, as here, that the defendant had been committed to a mental institution, solely on account of incompetency to stand trial, for an excessive period of time.

In this case, the defendant is *not* currently confined in a state mental hospital.

Having been found, in 1980, to be competent to stand trial, he is currently confined in the Logan County jail, awaiting a new trial after our reversal of his conviction based upon ineffective assistance of counsel. The most recent psychiatric reports, filed after reversal of his conviction, indicate that he is competent to stand trial.[3]

## B. DURATION OF INCOMPETENCY:
### *W. Va. Code*, 27–6A–1 to 27–6A–8

The defendant asserts that *W. Va. Code*, 27–6A–2, as enacted in 1974 and prior to its amendment in 1979, is applicable to his case and that it expressly requires dismissal of the criminal charges. *W. Va. Code*, 27–6A–2(c) provided, prior to amendment in 1979:

> (c) If the individual is found initially to be incompetent to stand trial with no substantial likelihood of obtaining competency, or if after such improvement period [of up to nine months] the individual is found to be incompetent to stand trial, the criminal charges shall be dismissed. The dismissal order may be stayed for ten days to allow civil commitment proceedings to be instituted pursuant to article five of this chapter.

The 1979 amendment to this statute added a subsection (d) and made distinctions between felony and misdemeanor cases:

> (c) If the individual is indicted for a misdemeanor and is found to be incompetent to stand trial with no substantial likelihood of obtaining competency, or if after such improvement period the individual is found to be incompetent to stand trial, the criminal charges shall be dismissed. The dismissal order may be stayed for ten days to allow civil commitment proceedings to be instituted pursuant to article five of this chapter.
>
> (d) If the individual is a defendant in a felony case and is found initially to be incompetent to stand trial with no substantial likelihood of obtaining competency, or if after such improvement period the individual is found to be incompetent to stand trial, then the director of health shall institute against the individual civil commitment proceedings pursuant to article five of this chapter and the criminal charges shall be dismissed. If the individual is committed pursuant to article five of this chapter, then the director of health shall cause the individual's competency to stand trial to be reviewed every six months during the period of his civil commitment, and shall report his findings to the court of record after every such review. If the director of health finds that the individual is competent to stand trial, then a hearing shall be held by the court of record in accordance with subsection (a) of this section. If, after such hearing, the individual is found competent to stand trial, he shall be tried; if, after such hearing, the individual is found incompetent to stand trial, he shall be recommitted for the period of his commitment as ordered pursuant to article five of this chapter, with mandatory review of his competency to stand trial every six months in accordance with this subsection. If said individual becomes competent to stand trial, the director of health shall notify the prosecuting attorney of the county where the criminal charges were brought against the individual.

---

**3.** While the defendant, according to the psychiatrists, is competent to stand trial, as defined in note 2 *supra*, he may or may not be civilly committable to a state mental institution. Civil commitment would require, *inter alia*, clear, cogent and convincing evidence that the defendant is likely to cause serious harm to himself or to others, based upon recent overt acts (the latter would not have to be shown if commitment of the defendant was based upon complete inability to care for himself due to mental retardation). *See W. Va. Code*, 27–5–4 [1981].

For the reasons discussed *infra* in the body of this opinion, *W. Va. Code*, 27–6A–2, as it read prior to the 1979 amendment to the same, is to be applied to this case. Accordingly, the State, pursuant to that section as it then read, may, but is not required to, bring civil commitment proceedings against the defendant within ten days after this opinion is received. Should the State decide not to bring such proceedings, or should the State fail to shoulder its burden of proof for civil commitment of the defendant, the defendant is not, for either of those reasons, to be released from the custody of the Logan County jailer, for, as discussed *infra* in the body of this opinion, the trial court still has jurisdiction to try the defendant on the murder charge.

Thus, the 1979 version of this specific section, *W.Va.Code,* 27–6A–2, explicitly requires, in a case involving an individual charged with a felony, that there be a review of such individual's competency to stand trial every six months and explicitly mandates a trial on a felony charge whenever the individual becomes competent to stand trial.

The situation of a person charged with a crime who is incompetent to stand trial is analogous in certain respects to that of a juvenile accused of a crime. In both situations the statutes afford procedural protections to a person under a disability as a prerequisite to the jurisdiction of the circuit court to try the person as a competent adult. In *State v. Bannister,* 162 W. Va. 447, 453–54, 250 S.E.2d 53, 56–57 (1978), this Court held that an amendment to a statute making it easier in certain types of cases to transfer juvenile proceedings to criminal jurisdiction did not apply retroactively to juvenile cases pending at the time of the amendment, where the alleged criminal offense was committed prior to the effective date of the amendment. The Court relied upon the general rule that a statute is presumptively prospective in operation, unless expressly or by necessary implication made retroactive.

Similarly, in this case the alleged criminal offense occurred prior to the effective date of the 1979 amendment to *W.Va.Code,* 27–6A–2. Nothing in the 1979 amendment indicates legislative intent that the statute be applied retroactively. Accordingly, it will not be applied to the defendant's case.[4]

Nonetheless, the 1974 version of *W.Va. Code,* 27–6A–1 to 27–6A–8, does not *forever* bar further prosecution of a person charged with a crime who is initially found to be incompetent to stand trial with no substantial likelihood of obtaining competency or who is found to be incompetent to stand trial after the six-to-nine month improvement period. *W. Va. Code,* 27–6A–5 [1974] provides for periodic review of a person's competency to stand trial.[5] *W.Va. Code,* 27–6A–5 [1974] also provides for the person's commitment to a mental institution to be terminated and for the return of the person to the custody of the sheriff for trial, whenever a court, after a hearing, finds that the person is competent to stand trial:

The periodic review of a person who has been found incompetent to stand trial shall include a clinical opinion with regard to the person's competence to stand trial, which opinion shall be made a part of the patient's medical record. If any person previously found incompetent to stand trial is later determined to be competent, the director of mental health shall notify the court of record, which shall promptly hold a hearing on the person's competency to stand trial. Any person found incompetent to stand trial may at any time petition the court of record for a hearing on his competency. Whenever a hearing is held and the court of record finds that the person is competent to stand trial, his commitment, if any, to a mental health facility shall be terminated and the court of record shall order his return to the custody of the sheriff for trial. However, if the person requests continued care and treatment during the pendency of the criminal proceedings against him and the mental health facility agrees to provide such care and treatment, the court of record

---

4. While the alleged criminal offense in this case occurred even prior to the 1974 enactment of *W.Va.Code,* 27–6A–2, the latter repealed and replaced *W.Va.Code,* 62–3–9, which *Walker, supra,* held to be unconstitutional. Consequently, the 1974 version of *W.Va.Code,* 27–6A–2, being the first constitutional statute on the subject, applies to the defendant's pending case by necessary implication.

5. The periodic review of competency to stand trial required by *W.Va.Code,* 27–6A–5 [1974] would occur no less often than every three months. *See W.Va.Code,* 27–5–9(c)(2) [1974, 1977]. As stated previously, the 1979 version of *W.Va.Code,* 27–6A–2 requires a periodic review of competency to stand trial every six months. Consequently, application of the 1974 version of *W. Va. Code,* 27–6A–1 to 27–6A–8, affords the defendant in this case the benefit of the more favorable statutory procedural provisions. *Cf. Gibson v. Bechtold,* 161 W. Va. 623, 626–27, 245 S.E.2d 258, 260 (1978) (juveniles entitled to benefit of more favorable protections under statutes amended after alleged offenses occurred).

may order the further hospitalization of such person.

## C. DURATION OF INCOMPETENCY: DUE PROCESS

■ Although the statutory law in this State authorizes the accused to be brought to trial on a felony charge whenever the accused attains competency to stand trial, such statutory law, on this jurisdictional point, must comport with procedural due process under *The Constitution of West Virginia*. "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." *W.Va. Const.* art. III, § 10.[6]

The constitutional guaranty of due process is the primary constitutional protection against prejudice to the defense caused by passage or lapse of time. *See United States v. MacDonald*, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704 (1982). "[T]he [due process] right [to an investigation and a trial without unreasonable delay] itself arises from the substantial prejudice that is presumed to affect a defendant's ability to respond to charges against him [or her] when the charges are [grossly] time-worn and stale." *State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394, 398 (1980) (eleven-year delay between commission of the crime and the indictment). "The effects of less gross delays upon a [criminal] defendant's due process rights must be determined by a trial court by weighing the reasons for delay against the impact of the delay upon the defendant's ability to defend himself." Syl. pt. 2, *id.*

In *Leonard*, this Court, in discussing the effect of the lapse of time upon due pro-

cess rights, "assume[d] no incapacity existed that prevented prosecution[.]" W.Va., 269 S.E.2d at 395. A similar point was made in *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). That case involved an unusual state statutory procedure which authorized the prosecutor to take a *"nolle prosequi* with leave," enabling the prosecutor, under state law, to restore the suspended case to the trial docket at any time in his or her discretion. The Supreme Court of the United States held that the statute violated the defendant's speedy trial rights. On the other hand, the court distinguished and implicitly approved other states' statutes allowing removal of the indictment from the trial docket with leave to reinstate for trial at an indefinite future date but which, under state law, apply only to *"situations in which the defendant cannot be brought before the court* or where he has consented to the removal." 386 U.S. at 221 n. 5, 87 S.Ct. at 992 n. 5, 18 L.Ed.2d at 7 n. 5 (emphasis added). Cited as an example of a case involving a constitutional procedure was *Rush v. State*, 254 Miss. 641, 647–48, 182 So.2d 214, 216 (1966), in which the defendant was in a mental institution due to incompetency to stand trial at the time the indictment was indefinitely "retired to the files," that is, suspended without dismissal.

The leading case on the prejudicial effects of a lengthy delay in bringing an accused to trial due primarily to the incompetency of the accused to stand trial is *Williams v. United States*, 250 F.2d 19 (D.C. Cir.1957). In that case the defendant had been tried (for assault with a deadly weapon) five times, two trials having ended in mistrial and two convictions having been

---

6. Another applicable constitutional provision is *W. Va. Const.* art. III, § 14, which provides, in pertinent part, that "[t]rials of crimes, and misdemeanors ... shall be ... [held] without unreasonable delay, ...". In syllabus point 1 of *Good v. Handlan*, 176 W.Va. 145, 342 S.E.2d 111 (1986), we held: "It is the three-term rule, W.Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." We will discuss the speedy trial aspects of this case under our state law primarily in section III of this opinion. This subsection

of our opinion concerns the question of whether, as a matter of due process, the delay in bringing the defendant to trial on a felony charge as a result of his or her incompetency bars the State forever from trying the defendant, even though his or her speedy trial rights, as pronounced in *W.Va.Code*, 62-3-21 [1959], have not technically been violated. Many of the federal precedents discussing the federal constitutional right to a speedy trial (*U.S. Const.* amend. VI) are very persuasive in this area. *See State ex rel. Leonard v. Hey*, W.Va., 269 S.E.2d 394, 397 (1980).

set aside for trial error. The primary defense was insanity at the time of the offense. The third conviction, which was before the court in this case, resulted in a sentence of one to three years. At the time of the court's opinion in this case, about eight years had elapsed since the indictment. Having been adjudicated incompetent to stand trial between the first and second trials, between the third and fourth trials and between the fourth and fifth trials, the defendant had been confined in a mental hospital for a total period of about one year and had been confined in jail for about six years.

On the record before the court the defendant appeared to have been sane at the time of the offense and competent at the time of the first trial, which resulted in a conviction. Not until two years after the first conviction did the prosecution finally confess error (because of the total lack of any instruction on the elements of the offense charged). During this two-year period of time the defendant developed "prison psychosis" and was committed for the first time to a mental hospital to restore his competency to stand trial. Thereafter, the defendant, like the defendant in the case now before this Court, had recurring episodes of psychosis.

Noting the dearth of psychiatric evidence on the defendant's mental condition at the time of the offense, and the extreme difficulty in making such a determination after so many years, the court held that the defendant's speedy trial rights had been violated, reversed the last conviction and ordered dismissal of the indictment. Considering the pattern of violence characterizing the defendant since his adolescence, the court suggested that the prosecution should institute civil commitment proceedings.

The court in *Williams* made the following analysis, which is particularly pertinent in the present case:

> To hold that delay occasioned by the accused's mental incompetence to stand trial always requires dismissal of his indictment would be to ignore the 'rights of public justice.' On the other hand, to resume the prosecution of the accused after long delay may in some circumstances violate his rights beyond the requirements of public justice. To sustain its right to try the accused seven years after the crime, the Government must show ... that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay....

> Undeniably the bulk of the seven-year delay in bringing appellant to the trial which resulted in his present conviction was a direct or indirect consequence of his mental incompetency. The accused's incompetency necessarily slows the judicial process. Such delay is inevitable....

> ....

> Whether or not the Government unreasonably extended the delay, we are agreed that the delay in this case was beyond the ordinary and that the extraordinary delay resulted in serious prejudice to appellant.

> When prosecution is delayed because of the accused's mental incapacity to stand trial, the difficulty of determining whether the accused was mentally responsible at the time of the crime is increased. Passage of time makes proof of any fact more difficult. When the fact at issue is as subtle as a mental state, the difficulty is immeasurably enhanced. Courts must on occasion risk the increased difficulty of proof. But the interest of justice requires that there be no difficulty which is reasonably avoidable. There is a duty to minimize the difficulty so that the judgment, when ultimately reached, may be relied on as the closest approach to truth of which the judicial process is capable. That duty rests upon the accused as well as upon the Government—upon the accused because his is the burden, in the first instance of making some showing of insanity, [citations omitted]; upon the Government because it has the burden, once there has been some showing of insanity, of establishing beyond a reasonable doubt that the crime was not the product of mental illness.

250 F.2d at 21–23. *See also Pitts v. North Carolina*, 395 F.2d 182, 184–85 (4th Cir. 1968).

Our law on the burden of proof on the issue of insanity at the time of the offense also places evidentiary burdens on both the prosecution and the accused:

'There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense.' Syllabus Point 2, *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981).

Syl. pt. 3, *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776 (1983).

Therefore, a lengthy delay in bringing the accused to trial, where, as here, the primary defense is insanity, presumptively causes prejudice to the State and to the accused in meeting their respective evidentiary burdens. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), recognizes the disadvantages to the State and the *advantages to the accused* that sometimes result from delay:

[D]eprivation of the right [to a speedy trial] may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof.

407 U.S. at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111–12.

A particular case from another state which is remarkably similar to the present case before us is *People v. Von Wolfersdorf*, 66 Misc.2d 904, 323 N.Y.S.2d 88 (Dutchess County Ct.1971). In that case the accused had been released from an institution for the "criminally insane" and committed to a civil hospital for the mentally ill, as a result of a federal habeas corpus proceeding in which the federal district court applied the same rationale employed in *Jackson v. Indiana* and *State ex rel. Walker v. Jenkins*, discussed *supra* in subsection II. A. of this opinion. After obtaining this relief as to type of custody, the accused subsequently in the New York state court sought dismissal of the indictment. The court denied such relief. In doing so it observed:

The defendant again claims that the lapse of time between the indictment and the present date [nearly twenty years] is such that it demands a dismissal of the indictment. Admittedly, the reason for the delay in the trial is solely because of the defendant's confinement in an institution and his unavailability for trial due to his mental incompetency to stand trial. *The People have not in any way caused the delay, or contributed toward it, but to the contrary are prohibited from proceeding until he is mentally capable of standing trial,* ...

. . . .

While the defendant has been confined in [the institution for the criminally insane] and now [in the civil hospital for the mentally ill] for nearly twenty (20) years, such period is not in excess of the possible life sentence he would receive were he convicted, ... This defendant cannot be said to be deprived of a speedy trial by reason of his incompetency to stand trial [citation omitted].

66 Misc.2d at 908, 323 N.Y.S.2d at 91–92 (emphasis added).[7]

We, too, have consistently held that

---

**7.** *See also Arthur v. People,* 165 Colo. 63, 66–67, 437 P.2d 41, 42–43 (1968) (eight and one-half years between alleged commission of forcible rape and trial awarded following reversal of guilty plea by Supreme Court of the United States; no prejudice; due process not denied); *State v. Wong,* 47 Haw. 361, 386–91, 389 P.2d 439, 453–55 (1964) (nearly six years between alleged commission of murder and attainment

of competency to stand trial; prejudice to insanity defense "speculative"; speedy trial rights not violated when no prosecution occurs during incompetency; long delay incident to incompetency does not *ipso facto,* as a matter of due process, discharge a defendant from prosecution); *State v. Dehler,* 257 Minn. 549, 560, 102 N.W.2d 696, 704–05 (1960) (eighteen years between alleged commission of murder of defendant's

'[a]n accused person, although he may have been sane at the time of the acts charged, cannot [properly] be tried, sentenced or punished while mentally incapacitated.' Syl. pt. 1, *State v. Arnold*, 159 W. Va. 158, 219 S.E.2d 922 (1975), *overruled upon other grounds in* syl. pt. 4, *State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980).

Syl. pt. 2, *State v. Swiger*, 175 W.Va. 578, 336 S.E.2d 541 (1985). *See also State v. Cheshire*, 170 W.Va. 217, 219, 292 S.E.2d 628, 630 (1982) (this bar to prosecution "is a fundamental guaranty of due process"); *State v. Milam*, 159 W. Va. 691, 697, 226 S.E.2d 433, 438 (1976).

█ Being a bar to trial, an accused's incompetency to stand trial, regardless of the duration thereof, will not, as a matter of due process, ordinarily require dismissal of an indictment for a felony. The State must, however, show that the accused suffered no substantial prejudice beyond that which ensued from the ordinary and inevitable delay attendant to the attainment of competency to stand trial.[8]

mother and scheduling of new trial following release from incarceration upon habeas corpus petition; no prejudice to insanity defense shown from lapse of time; speedy trial rights not violated); *State v. Bauer*, 299 N.W.2d 493, 498 (Minn.1980) (eight years between alleged commission of murder and ruling by this court on motion to dismiss indictment; no prejudice to insanity defense on the record; delay of trial due to incompetency is necessary to protect defendant's right to fair trial, and such delay does not violate defendant's speedy trial rights); *State v. Johnson*, 579 S.W.2d 771, 773–76 (Mo.Ct. App.) (eight and one-half years between alleged commission of murder and trial; during almost all of that time defendant was incompetent; failure to try an accused because of mental incompetency does not violate speedy trial rights, for trial of an accused while legally incompetent violates due process), *cert. denied*, 444 U.S. 968, 100 S.Ct. 458, 62 L.Ed.2d 381 (1979); *Watts v. Supreme Court*, 36 A.D.2d 17, 19–20, 318 N.Y.S.2d 840, 842–43 (ten and one-half years between alleged commission of murder and assault in the first degree and attainment of competency to stand trial; delay, however long, in bringing defendant to trial does not violate speedy trial or due process rights where delay is caused by protection of defendant's due process right not to be tried while mentally incompetent), *appeal denied*, 28 N.Y.2d 714, 320 N.Y.S.2d 755, 269 N.E.2d 412 (1971); *Commonwealth v. McQuaid*, 464 Pa. 499, 517–22, 347 A.2d 465, 475–77 (1975) (fifteen years between alleged commission of murder and hearing on motions for civil commitment proceedings and dismissal of indictment; defendant still incompetent to stand trial; delay of trial caused by incompetency is necessary to protect defendant's due process right to fair trial; no prejudice to insanity defense on the record containing all psychiatric records; defendant's continuing anxiety over pending charges outweighed by prosecution's interest in trying a serious offense); *Hull v. State*, 699 S.W.2d 220, 220–22 (Tex.Crim.App.1985) (eight months between alleged commission of murder of defendant's mother and attainment of competency to stand trial; speedy trial rights not vio-

lated during this period, even though "it is almost inevitable that some prejudice to appellant's defense resulted from the delay."); *State v. Alter*, 67 Wash.2d 111, 119–21, 406 P.2d 765, 770–71 (1965) (nearly ten years between commission of murder and attainment of competency; four factors are relevant to whether denial of a speedy trial assumes due process proportions: length of delay, reason for delay, prejudice and waiver; delay due to incompetency does not, *ipso facto*, prejudice a defendant or constitute unreasonable and unnecessary delay).

8. An insightful summary of the importance of keeping a defendant's "speedy trial" claim in proper perspective is contained in *State v. Wilson*, 35 Md.App. 111, 371 A.2d 140 (1977), *aff'd*, 281 Md. 640, 382 A.2d 1053, *cert. denied*, 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978):

What is the denial of the right to a speedy trial? ... [I]t is not one thing but many things. What represents an inordinate delay within the contemplation of the Sixth Amendment, therefore, depends upon precisely what it is that the defendant seeks when he asserts a 'speedy trial' claim. It is one thing when he demands, 'I have a right to a speedy trial; therefore, try me immediately.' It is yet another when he demands, 'I have a right to a speedy trial; therefore, release me upon my recognizance if you do not intend to give me an immediate trial.' It is yet something else again when he demands, 'I had a right to a speedy trial; therefore, dismiss forever all charges against me.' In view of what is at stake, it makes all the difference in the world to discover that end which a defendant is seeking to attain. The request, 'Try me today!,' is a far cry from that other request, 'Try me never, because you did not try me yesterday!' ... There is a gaping disparity between ordering an immediate trial, releasing upon bail or recognizance, and dismissing with ultimate prejudice society's accusation of outlawry. The values invigorating the Sixth Amendment are vitally engaged when an accused seeks expeditious resolution of the charges against him; those values are sometimes

Our holding on this point is consistent with *W. Va. R. Crim. P.* 48(b), which provides in pertinent part: "If ... there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment...." [9] The delay which is inherent in the attainment of competency to stand trial by an incompetent accused is not an "unnecessary delay," but a constitutionally required delay.

In this case, the bulk of the delay prior to the trial in 1980 was due to the defendant's numerous and, in a couple of instances, very lengthy escapes from the state mental hospitals. The delay after 1980 was due to appeal of the conviction and reevaluation of the defendant's competency to stand trial. The primary defense here is insanity at the time of the alleged crime. The State has the burden of proof on the issue of insanity; the passage of time has likely prejudiced the State in carrying this burden. The defendant also has evidentiary burdens with respect to the insanity defense, and the eighteen-year delay here presumptively has prejudiced the

defendant's ability to present such defense. Prior to trial the State must show, and the trial court must find, that any substantial prejudice to the defendant's ability to present his insanity defense was not attributable to the State. [10]

### III.

■ Turning to the second certified question, specifically, whether the defendant's speedy trial rights under *W. Va. Code*, 62-3-21 [1959] have been violated, we note first the pertinent language of that statute, known as the "three-term rule":

> Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; ...

shamelessly exploited when an accused waits to turn to the Sixth Amendment for the first time in order *to avoid* that resolution of the charges against him.

In dealing with the dismissal of an indictment because of a denial of the right to a speedy trial, appellate courts are not engaged in abstract, academic exercises. They cannot ignore the stark reality of the heavy and foreclosing sanction employed. It is no mere exclusion of evidence, which permits society to try again to prove its accusation with other and untainted evidence. It is no mere reversal of a conviction, which permits society to try again to prevail at a trial free from error. It is the final judgment that society is forever powerless to proceed against a potentially dangerous outlaw in its midst. It is the severity and finality of the sanction that must give us pause in applying it. 35 Md.App. at 112–14, 371 A.2d at 142–43 (emphasis in original).

9. *W. Va. R. Crim. P.* 59 states the effective date for the West Virginia Rules of Criminal Procedure:

These rules shall take effect on October 1, 1981. They govern all proceedings in actions brought after they take effect and also further proceedings in actions then pending, except to the extent that in the opinion of the circuit court their application in a particular action pending when the rules take effect would not

be feasible or would work injustice, in which event the former procedure applies.

10. The two most recent psychiatric reports tentatively suggest insanity at the time of the alleged crime. The language in those reports indicates that the psychiatrists were using "insanity" and "incompetency" nearly interchangeably. The test for "competency to stand trial" is set forth in note 2, *supra*. The test for "insanity" at the time of the alleged crime is stated in syllabus point 4 of *State v. Bragg*, 160 W.Va. 455, 235 S.E.2d 466 (1977):

'When a defendant in a criminal case raises the issue of insanity, the test of his responsibility for his act is whether, at the time of the commission of the act, it was the result of a mental disease [or defect] causing the accused to lack the capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law, and it is error for the trial court to give an instruction on the issue of insanity which imposes a different test or which is not governed by the evidence presented in the case.['] Point 2, Syllabus, *State v. Myers*, [159] W. Va. [353], 222 S.E.2d 300 (1976) [, *overruled implicitly on another point in* syllabus point 2 of *State v. Milam*, 163 W. Va. 752, 260 S.E.2d 295 (1979) ].

Thus, it is possible for a defendant in a criminal case to be sane at the time of the alleged crime and incompetent to stand trial thereafter, or vice versa.

or by a continuance granted on the motion of the accused; ...

The defendant contends at the outset that two terms prior to the first trial (September, 1969 and September, 1973) are countable against the State under the three-term rule, as terms not coming within any of the exceptions to such rule. The defendant points to the fact that the State is still proceeding under the original and only indictment against the defendant for this alleged crime.

The defendant's contention on this point is without merit: "The statute in question has never been applicable where a defendant appeals his [or her] conviction and sentence to an appellate court and it is set aside and remanded for a new trial, either because there was reversible error in the trial or the trial was void." *State v. Holland,* 149 W. Va. 731, 738, 143 S.E.2d 148, 153 (1965). "[B]y accepting the benefit of having his [or her] conviction and sentence set aside and held for naught [the defendant] must also accept any disadvantage which may accrue therefrom." *Id.,* 149 W. Va. at 738–39, 143 S.E.2d at 153. Retrial must occur within three terms after the term in which relief is granted upon habeas corpus or appellate review, subject to the statutory exceptions excusing delay. *See State v. Gwinn,* 169 W. Va. 456, 470, 288 S.E.2d 533, 541 (1982), *questioned on another point, State v. Young,* 173 W.Va. 1, 8, 311 S.E.2d 118, 125 (1983).[11]

Terms of court for the Circuit Court of Logan County commence on the second Monday in January, on the second Monday in May and on the second Monday in September. *W. Va. Code,* 51–2–1g [1931]. The defendant claims that there have been five terms of court after our reversal of his conviction which are countable against the

State under the three-term rule and that he is, therefore, discharged from prosecution. We disagree. An exception to the three-term rule applies to each of the terms in question.

■ The September, 1983 term of court is not countable against the State because the defendant's competency to stand trial was being tested (upon the defendant's motion). Dr. MacCallum's report was not received during this term. In syllabus point 2 of *State v. Rhodes,* 166 W.Va. 402, 274 S.E.2d 920 (1981), this Court held: "Where a defendant is unable to be tried in a particular term because of his [or her] incompetency to stand trial, such term should not be counted under our three-term statute, W. Va. Code, 62–3–21." Similarly, any term during which the defendant is unable to be tried because his or her competency to stand trial is being tested or evaluated does not count in favor of discharge from prosecution under the three-term rule, *W. Va. Code,* 62–3–21 [1959]. "*W. Va. Code,* 62–3–21 [1959] specifically provides that a term during which an accused is insane shall not be counted for the purpose of the 'Three Term Rule.' This provision is sufficiently broad to include any term during which a defendant's mental competency is being tested." *State ex rel. Boso v. Warmuth,* 165 W. Va. 247, 250 n. 1, 270 S.E.2d 631, 633 n. 1 (1980), *overruled on another point, State ex rel. Sutton v. Keadle,* 176 W.Va. 138, 144–45, 342 S.E.2d 103, 108–09 (1985). *See also Good v. Handlan,* 176 W.Va. 145, 152, 342 S.E.2d 111, 117 (1986).

For the same reason, the January, 1984 term of court is not countable against the State. Dr. MacCallum's report was received during this term. Thus, the defendant's competency to stand trial was being tested or evaluated during this term.

---

11. Even if the three-term-rule statute applied to the two terms in question prior to the trial in 1980, those two terms were excused by the "insanity" exception. The September, 1969 term of court would not be countable against the State because the term during which the defendant is returned to court upon a finding of competency to stand trial is not counted under *W. Va. Code,* 62–3–21 [1959]. *Good v. Handlan,* 176 W.Va. 145, 152, 342 S.E.2d 111, 117 (1986); *State v.*

*Rhodes,* 166 W.Va. 402, 408, 274 S.E.2d 920, 924–25 (1981). The September, 1973 term of court would be excluded because any term during which a defendant's competency is being tested would come within the insanity exception to the three-term rule. *Good v. Handlan,* 176 W.Va. 145, 152, 342 S.E.2d 111, 117 (1986); *State ex rel. Boso v. Warmuth,* 165 W. Va. 247, 250 n. 1, 270 S.E.2d 631, 633 n. 1 (1980), *overruled on another point, State ex rel. Sutton v.*

For the same reason, the May, 1984 term of court is not countable against the State. The defendant's competency to stand trial was being tested (by Dr. Neilan upon the State's motion to which the defendant acquiesced).[12]

 The September, 1984 term of court is not countable against the State because the trial court, after the December 14, 1984 hearing, did not have enough time during this term to rule on the complex duration-of-incompetency motion. "[W]here a court does not have time for the disposition of motions or pleas filed by the accused and a term passes as a result thereafter, such term cannot be counted as one of the three terms under the provisions of Code, 62–3–21, as amended." *State ex rel. Spadafore v. Fox,* 155 W. Va. 674, 679, 186 S.E.2d 833, 836 (1972). This principle is derived from the explicit exception to the three-term rule where the failure to try the defendant during a term of court was caused "by a continuance granted on the motion of the accused[.]" *Spadafore, supra,* explains that a formal motion for a continuance by the defendant is not necessary in order to charge the defendant with the delay in commencing trial. Syllabus point 2 therein states:

> Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of Code, 62–3–21, as amended.

The January, 1985 term of court is not countable against the State for the same reason, that is, because the failure to try the defendant during that term of court was caused by a continuance granted on the motion, in essence, of the accused. The hearing on the defendant's motion to dismiss based upon the three-term rule was not held until June 14, 1985, during the next term of court (the May, 1985 term), at which time the defendant was prepared to argue his three-term rule motion. The delay was attributable to the defendant.

Having answered the certified questions, we remand this case for further proceedings consistent herewith.

Certified questions answered; case remanded.

---

*Keadle,* 176 W.Va. 138, 144–45, 342 S.E.2d 103, 108–09 (1985).

**12.** "[S]uch acquiescence to a second examination constituted sufficient good cause for the trial court to continue the trial to the next term." *Good v. Handlan,* 176 W.Va. 145, 152, 342 S.E.2d 111, 117 (1986) (one-term rule of *W.Va.Code,* 62–3–1 [1981]).